486 So.2d 106 (1986)
STATE of Louisiana
v.
Guy A. LOMBARD.
No. 85-K-1643.
Supreme Court of Louisiana.
March 31, 1986.
*107 John Wilson Reed, Thomas J. Divens, Glass & Reed, for defendant-applicant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John Mamoulides, Dist. Atty., Pat Leitz, Dorothy Pendergast, Asst. Dist. Attys., for plaintiff-respondent.
MARCUS, Justice.
Guy A. Lombard was indicted by the grand jury for the second degree murder of John St. Pierre in violation of La.R.S. 14:30.1. After trial by jury, defendant was found guilty as charged and sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The court of appeal affirmed defendant's conviction and sentence.[1] On defendant's application, we granted certiorari to review the correctness of that decision.[2]
The record reveals the following facts. On the night of September 3, 1983, John St. Pierre, a seventeen-year-old senior at Ehret High School and varsity football player, and his girlfriend, Heidi Jeandron, were sitting in the bleachers of the West Jefferson Stadium watching a football game between two high schools, Shaw and O. Perry Walker. Also attending the game was defendant, a sixteen-year-old junior at Redeemer High School and junior varsity basketball player, who was standing at the top of one of the stadium ramps. After the football game had begun, Jeandron left her seat to go to the restroom. When she got to the ramp, defendant blocked her path. Jeandron asked if he had a problem. As she nudged her way past him, he responded that he would not call it a problem, but a passion. On her way back to her seat, Jeandron again had to push her way past defendant. Upon arriving at her seat, Jeandron told St. Pierre what had happened. St. Pierre approached defendant *108 and said, "[i]f you say something to my girlfriend again, I'm going to kill you," to which defendant responded, "where is your girlfriend, I will go and tell her something." St. Pierre warned defendant that if anything remained to be settled, he would be back later. After St. Pierre had left, defendant remarked to a few persons standing around him that if St. Pierre returned, it would not be much of a fight because he had a knife on him which he would use.
Later, as St. Pierre and Jeandron were leaving the game, they passed defendant without incident; he remained at the top of the ramp. It is unclear how it started, but by the time St. Pierre and Jeandron reached the bottom of the ramp, defendant and St. Pierre were arguing. St. Pierre then said, "[i]f you want to fight me, we [can] go in the parking lot." Lombard refused this invitation to fight, but grabbed his genital area and made an obscene gesture toward St. Pierre. St. Pierre responded with, "that's your ass," handed his glasses to Jeandron and started up the ramp toward defendant. St. Pierre threw the first blow; then he grabbed defendant and hurled him against the railing. Defendant fell to his knees with St. Pierre on top of him. St. Pierre wrapped his right arm around defendant's neck in a stranglehold while twisting defendant's left arm behind his back. Defendant's right arm remained free enabling him to remove the knife from his pocket, flick off the sheath, and stab St. Pierre twice. The first, and fatal, wound was inflicted on the left side of his chest; the second on his upper right leg. An ambulance took St. Pierre to a nearby hospital where he was pronounced dead on arrival. Defendant was taken into custody on the ramp where the stabbing had occurred.
Defendant raises three assignments of error: (1) the trial judge erred in denying his motion for defense witness immunity; (2) the trial judge erred in refusing to give his requested special jury charge; and (3) the trial judge erred when he failed to modify the second degree murder verdict and render a judgment of conviction for manslaughter.

Defense Witness Immunity
Defendant contends that the trial judge erred when he denied his motion seeking immunity for a defense witness, Randy Bruner, who had invoked the fifth amendment privilege against self-incrimination.
Randy Bruner and defendant, friends since kindergarten, had gone to the football game together and remained together until the stabbing. After the stabbing, defendant allegedly gave Randy the murder weapon which, to date, has not been recovered. Randy was subpoenaed to testify before the grand jury. His father, an attorney, decided that Randy should invoke the fifth amendment privilege on the ground that his testimony might incriminate him. Mr. Bruner and his son went to the district attorney's office to inform the prosecutor that Randy would not testify. The prosecutor told them that he was not interested in Randy; he just wanted to learn the truth. After being informed that Randy had no knowledge of any threats made before the stabbing, the prosecutor told Mr. Bruner that he was not interested in Randy's testimony and that no immunity would be granted.
After the close of the state's case, defendant, outside the presence of the jury, moved for defense witness immunity contending that Randy had been threatened by the prosecutor. The prosecutor replied that he had merely told Randy's father that he thought Randy was an accessory to the crime and that if the boy's testimony confirmed this suspicion charges would be filed. After hearing the testimony of Randy and his father, the judge denied defendant's motion.
This court has never recognized defense witness immunity. In State v. Mattheson, 407 So.2d 1150 (La.1981), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1982), we rejected a claim for such immunity on the grounds that:
There is no statutory authority for a Louisiana court to grant a defense witness *109 use immunity absent a request from the attorney general together with the district attorney for the district in which the proceeding is or may be held. La. Code Crim.P. art. 439.1. Therefore, any judicially-fashioned immunity must arise from the constitutional guarantees of compulsory process or due process....
We do not consider that the sixth amendment supports a claim for defense witness immunity. Traditionally, the sixth amendment's compulsory process clause gives defendant the right to bring his witness to court and have the witness' non-privileged testimony heard, but does not carry with it the traditional right to displace a proper claim of privilege, including the privilege against self-incrimination.... Nor has section 16 of article 1 of the Louisiana Constitution of 1974 been construed to grant such a right....
Additionally, we do not consider that the due process clause requires that defense witness immunity must be ordered whenever it seems fair to grant it. The essential fairness required by the fifth amendment guards the defendant against overreaching by the prosecutor and insulates him against prejudice. It does not create general obligations for prosecutors or courts to obtain evidence protected by lawful privileges....
We consider that a trial judge properly rejects a claim for defense witness immunity whenever the witness for whom immunity is sought is an actual or potential target of prosecution.
Defendant contends that Mattheson's rejection of defense witness immunity was qualified, that under certain narrow circumstances a trial judge can grant immunity. Specifically, defendant argues that, under Mattheson, a court may grant immunity where there has been prosecutorial misconduct or where the witness is not truly a potential defendant. It is not necessary for us to rule on the correctness of defendant's interpretation, however, because Randy Bruner was clearly a potential defendant, and the record contains no evidence of misconduct by the prosecutor. The prosecutor believed that Randy had disposed of the murder weapon. He told the Bruners that if Randy's testimony confirmed his suspicion Randy would be charged as an accessory. There were no harassing threats nor was there any intimidation. The trial judge correctly denied defendant's motion for defense witness immunity. In any event, the omission of Randy's testimony was not prejudicial to defendant. Even if Randy, a long time friend of defendant and recipient of the knife which was never recovered, had testified that defendant made no threats prior to the stabbing, his testimony would have been contradicted by that of two other relatively independent witnesses.[3] Under these circumstances, we consider that the jury would have given little weight to Randy's testimony; hence, it is unlikely that the presence of his testimony would have changed the verdict.

Defendant's Special Requested Jury Charge
Defendant contends that the trial judge erred in refusing to give the requested special charge that:
Mere words, even though uttered and designed to incite or irritate, cannot excuse a battery.
Thus, if you find that the defendant uttered words which were designed to incite or irritate the victim, such words are insufficient to justify an attack upon the person uttering such words.[[4]]
*110 He argues that without this instruction, the jury might have concluded that his verbal provocations made him the aggressor such that La.R.S. 14:21 would bar him from claiming the right of self-defense.
The requested special charge was a correct statement of the law, but it was incomplete. In determining whether defendant was the aggressor under La.R.S. 14:21, the jury must consider all the circumstances from the inception of the confrontation to its cessation. State v. Brent, 347 So.2d 1112 (La.1977). See also State v. Simmons, 414 So.2d 705 (La.1982); State v. Domingue, 166 La.859, 118 So. 46 (1928). The proposed instruction, however, focuses on the battery implying that St. Pierre, because he threw the first blow, was the aggressor and that defendant was not. In order to avoid this implication, the trial judge would have been required to add a qualification to the effect that the legal principle set forth in the instruction was only one factor to consider in determining whether defendant was the aggressor.[5] A trial judge is required to give a special requested charge only if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. La. Code Crim.P. art. 807. Since defendant's requested special charge required qualification and, without such qualification it might have misled and confused the jury, the trial judge did not err in refusing to give it. In any event, the judge's failure to give the requested charge was harmless because the evidence concerning the events surrounding the confrontation clearly established to the jury that defendant was not the aggressor and that he had a right to claim self-defense.[6]

Second Degree Murder or Manslaughter
Defendant contends that the trial judge erred in failing to modify the verdict of second degree murder and render a judgment of conviction for manslaughter.[7] He argues that the evidence viewed in light most favorable to the state supports only the conviction of the lesser offense.
Manslaughter is a homicide which would be either first or second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. La.R.S. 14:31(1).[8] Thus, the presence of "sudden passion" or "heat of blood" distinguishes manslaughter from murder. The court has stated on several occasions, however, that "sudden passion" and "heat of blood" are not elements of the offense of manslaughter; rather, they are mitigatory factors in the nature of a defense which exhibit a degree of culpability less than that present when the homicide is committed without them. State v. Tompkins, 403 So.2d 644 (La.1981); State v. *111 Temple, 394 So.2d 259 (La.1981); State v. Peterson, 290 So.2d 307 (La.1974).[9] Since they are mitigatory factors, a defendant who establishes by a preponderance of the evidence that he acted in a "sudden passion" or "heat of blood" is entitled to a manslaughter verdict.[10] Where such proof has been introduced, a second degree murder verdict is inappropriate.
Defendant contends that he met this burdenthat he proved the presence of the mitigatory factors by a preponderance of the evidence. In reviewing defendant's claim, this court must determine whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors were not established by a preponderance of the evidence. State v. Bryan, 454 So.2d 1297 (La.App.3d Cir.), cert. denied, 458 So.2d 128 (1984); see also Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Moore v. Duckworth, 443 U.S. 713, 99 S.Ct. 3088, 61 L.Ed.2d 865 (1979); State v. Roy, 395 So.2d 664 (La.1981).
The evidence established that St. Pierre threatened to kill defendant. Defendant told his friends that if St. Pierre returned, he had a knife which he would use. The state argues that defendant's statements indicated a plan to provoke an altercation so that he could stab St. Pierre. The evidence, however, refutes the state's contention: as St. Pierre and Jeandron were leaving the game, defendant let them pass unscathed; also when St. Pierre invited him to meet in the parking lot for a fight, defendant refused; and, finally, when St. Pierre announced "that's your ass" and marched up the ramp, defendant did not rush down to meet his opponent, nor did he unsheath his knife in preparation for the impending fight. Defendant did not unsheath his knife until after he had been punched, thrown against a metal rail, knocked onto the cement ground, and put into a stranglehold with his left arm wrenched behind his back. After being placed in this position, in a panic, he lashed out with his knife. However, as he testified, he did not want to kill St. Pierre; he just wanted to get free.
A preponderance of the evidence clearly shows that defendant committed the offense in a sudden passion or heat of blood caused by a provocation which would have deprived an average person of his self control and cool reflection. No rational trier of fact could have concluded otherwise. Thus, the jury erred when it found defendant guilty of second degree murder. It should have returned a verdict of manslaughter. Hence, the trial judge erred in failing to modify the verdict and render a judgment for the lesser offense. La.Code Crim.P. art. 821(C).
If the appellate court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court may modify the verdict and render a judgment of conviction on the lesser included responsive offense. La.Code Crim.P. art. 821(E). Manslaughter is a lesser included responsive offense to second degree murder. La.Code Crim.P. art. 814(A)(3). Accordingly, in the instant case, the verdict of second degree murder should be reduced to manslaughter.

DECREE
For the reasons assigned, the judgment of the court of appeal is affirmed in part *112 and reversed in part. It is reversed insofar as it failed to modify the verdict and set aside the sentence; otherwise, it is affirmed. Accordingly, the verdict of second degree murder is modified; a judgment of conviction for manslaughter is rendered; the sentence is set aside, and the case is remanded to the district court for sentencing.
LEMMON, J., concurs and will assign reasons.
NOTES
[1] 471 So.2d 782 (La.App. 5th Cir.1985).
[2] 477 So.2d 1115 (La.1985).
[3] Marc Blancq and Carl Hartwell testified that they heard defendant talking about his knife and his willingness to use it should St. Pierre return. Blancq did not know St. Pierre and had met defendant only the day before. Hartwell knew St. Pierre but not defendant.
[4] The following instruction on aggression, taken from La.R.S. 14:21, was read to the jury:

A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.
Thus, if you find that the defendant was the aggressor or that he brought on the difficulty, you must reject his claim of self-defense unless you find:
(1) that he withdrew from the conflict; and
(2) that his withdrawal was in good faith; and
(3) that he withdrew in a manner that put his adversary on notice that he wished to withdraw and discontinue the conflict.
[5] Other factors not covered by the special requested charge which the jury had to consider included defendant's obscene gesture, his physical contact with Jeandron, and his intent whether he provoked the battery as a pretext for killing St. Pierre.
[6] Although not assigned as error in brief to this court, the record fully supports that the state carried its burden of proving beyond a reasonable doubt that defendant did not act in self-defense.
[7] This relief was sought alternatively in defendant's motion for post-verdict judgment of acquittal in accordance with La.Code Crim.P. art. 821(C).
[8] La.R.S. 14:31(1) defines manslaughter as:

(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed....
[9] Since "sudden passion" and "heat of blood" are not elements of the crime, the state does not bear the burden of proving them. Neither is there a requirement in our law that these factors be affirmatively established by the defendant. Instead, the jury is free to infer these mitigatory factors from the evidence. Thus, a manslaughter verdict is responsive to a second degree murder indictment even though the record contains no evidence of "sudden passion" or "heat of blood." State v. Tompkins, 403 So.2d 644 (La.1981); State v. Peterson, 290 So.2d 307 (La.1974).
[10] The United States Supreme Court has ruled that requiring a defendant to prove the presence of the mitigatory factors by a preponderance of the evidence does not violate the United States Constitution. Patterson v. New York, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); see also State v. Chelette, 453 So.2d 1282 (La.App.3d Cir.), cert. denied, 458 So.2d 127 (1984).