839 So.2d 1075 (2003)
STATE of Louisiana, Appellee,
v.
Gary Wayne BROOKS, Appellant.
No. 36,855-KA.
Court of Appeal of Louisiana, Second Circuit.
March 5, 2003.
*1076 Louisiana Appellate Project, by James E. Beal, Jonesboro, for Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, D. Brian Harkins, Assistant District Attorney, for Appellee.
Before BROWN, CARAWAY & PEATROSS, JJ.
PEATROSS, J.
Defendant, Gary Wayne Brooks, was charged with second degree murder in violation of La. R.S. 14:30.1. Defendant was tried by a jury and convicted as charged. He was subsequently sentenced to serve life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Defendant now appeals his conviction, arguing that the evidence presented at trial was insufficient to convict him of second degree murder. For the reasons stated herein, we affirm.

FACTS
In the early morning hours of May 29, 1999, Defendant shot and killed Melvin Fuller ("Fuller"). At the time of the shooting, Fuller was sitting in his vehicle outside the American Legion Hall in Monroe, Louisiana. In the vehicle, along with Fuller, were Robbie Nell Jenkins ("Jenkins"), Linda Bursey ("Bursey") and Sheila Ford ("Ford"), Fuller's sister. Defendant was Bursey's estranged husband, who was living apart from her at the time of the incident. The four vehicle occupants had earlier attended a dance at the American Legion Hall and were about to leave when the shooting occurred. Defendant had also been at the dance, but had caused no earlier trouble with Bursey.
Jenkins, Bursey and Ford gave consistent statements to the police investigators, and later at trial, which implicated Defendant as the person who shot Fuller. Further, they each testified that he had committed the shooting without any provocation. The testimony at trial established that Defendant approached Fuller's vehicle as it was about to drive off. Defendant *1077 first opened the right rear passenger door where Bursey was sitting, attempting to talk to her. Bursey asked Defendant not to cause a scene, to leave and to call her later at home. Ford told Defendant to shut the door because she had to go to work the next day. Defendant left and the car remained stationary while Fuller adjusted his CD player.
Only moments after Defendant left the vehicle, the four vehicle occupants became startled by a noise at the rear of the vehicle. Defendant had fired a shot at the back of the vehicle, hitting the trunk. Defendant then came to the front driver's side of the vehicle and began shooting into the vehicle at Fuller, hitting him with a shot to his chest. Attempting to get away from Defendant, Fuller got out of the vehicle and ran back toward the American Legion Hall. Fuller died a short time later from the gunshot wound. After shooting into the vehicle, Defendant immediately fled the scene, but was later apprehended by Monroe police at his mother's residence. Defendant was transported to the Monroe Police Department where he gave two conflicting statements to the police.
In his first statement to the police, Defendant claimed he shot Fuller in self-defense because he thought Fuller was pulling a gun on him. In his second statement, however, taken after police investigators told him no gun was found on the victim or in the victim's car, Defendant said he shot Fuller because Fuller told him to leave his wife alone. Also in the second statement, Defendant admitted that he did not see Fuller holding a gun and that he shot several times into the vehicle at Fuller. Defendant was charged with second degree murder pursuant to a superseding bill of indictment filed on January 17, 2001; and, he was convicted as charged by the jury on February 6, 2002. On April 26, 2002, Defendant was sentenced by the trial judge to serve life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. This appeal ensued.

DISCUSSION
Defendant argues that there is insufficient evidence that he possessed the specific intent to kill or inflict great bodily harm, as is required to convict him of second degree murder. Defendant argues that his own statement to the police is the only evidence that can be used to indicate what his state of mind was at the time of the shooting. He asserts that this statement is evidence that he acted in immediate, sudden passion or heat of blood caused by provocation sufficient to deprive the average person of sound reason. Based on this rationale, Defendant urges that the evidence in the instant case can only support a finding that he committed the lesser crime of manslaughter. We do not agree.
The standard for reviewing a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Rosiere, 488 So.2d 965 (La.1986). The principal criterion of a Jackson v. Virginia review is rationality. State v. Mussall, 523 So.2d 1305 (La.1988). Due process demands that a criminal conviction cannot constitutionally stand if it is based on a record from which no rational trier of fact could find guilt beyond a reasonable doubt. Id.
In reviewing the evidence, the whole record must be considered because a rational trier of fact would consider all of the evidence, and the actual trier of fact is presumed to have acted rationally until it appears otherwise. If rational triers of fact could disagree as to the *1078 interpretation of the evidence, the rational trier's view of all of the evidence most favorable to the prosecution must be adopted. Thus, irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall, supra.

Manslaughter
Defendant argues that, when he shot Fuller, he acted in immediate, sudden passion or heat of blood because Fuller provoked him. He insists that his statements to the police are evidence that he was provoked and that this evidence supports a finding that he committed the lesser crime of manslaughter rather than second degree murder. La. R.S. 14:31 defines manslaughter as follows:
A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed.
"Sudden passion" and "heat of blood" have been found not to be separate elements of the offense, but are mitigating factors that may show less culpability than when a homicide is committed without them. State v. Lombard, 486 So.2d 106 (La.1986). Provocation is a question of fact to be determined by the trier of fact. In order to be entitled to the lesser verdict of manslaughter, a defendant is required to prove mitigatory factors by a preponderance of the evidence. State v. Mackens, 35,350 (La.App.2d Cir.12/28/01) 803 So.2d 454; State v. Lombard, supra.
Fuller was unarmed when he was shot and killed by Defendant. Defendant claims that he was provoked when the victim told him to leave his wife alone. Whether the victim, however, said anything at all to Defendant is in doubt. The only evidence to support that the victim said anything to the Defendant was Defendant's own statement to police investigators. Jenkins, Bursey and Ford, all of whom witnessed the shooting, each denied that the victim said anything at all to Defendant. These same witnesses testified that none of the vehicle occupants engaged in any type of confrontation or heated argument with Defendant prior to the shooting. Confronted with this inconsistency, the jury was free to draw its own conclusion and disregard Defendant's statements as evidence of any mitigation of Defendant's conduct.
Even if the jury determined that the victim told Defendant to leave his wife alone, it could reasonably conclude that the victim's actions were not sufficient to mitigate Defendant's action from second degree murder to manslaughter. Provocative acts held to rise to the level of mitigating conduct have involved physical threats or actions on the part of the victim. See State v. Lombard, supra, and State v. Ruff, 504 So.2d 72 (La.App. 2d Cir.1987), writs denied, 508 So.2d 64 and 65 (La. 1987). Moreover, our courts have not derogated from the principle that "mere words or gestures, however offensive or insulting, will not reduce homicide from murder to manslaughter." State v. Massey, 535 So.2d 1135 (La.App. 2d Cir.1988); State v. Conerly, 48 La. Ann. 1561, 21 So. 192 (La.1896). Considering the totality of the record before us, a rational trier of fact could have concluded that Defendant *1079 did not establish the mitigating factors for manslaughter, reasonableness of provocation and heat of blood, by a preponderance of the evidence.

Second Degree Murder
La. R.S. 14:30.1 defines second degree murder as follows:
The killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm.
Specific intent is a state of mind and need not be proved as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982); State v. Fuller, 414 So.2d 306 (La.1982); State v. Doby, 540 So.2d 1008 (La.App. 2d Cir. 1989), writ denied, 544 So.2d 398 (La. 1989). Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act.
La. R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); State v. McCray, 621 So.2d 94 (La.App. 2d Cir.1993). Pointing a gun at the victim and firing the gun has been ruled sufficient evidence to infer specific intent to kill or do great bodily harm in State v. Procell, 365 So.2d 484 (La.1978), cert. denied, 441 U.S. 944, 99 S.Ct. 2164, 60 L.Ed.2d 1046 (1979). The law is that the discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person. State v. Maxey, 527 So.2d 551 (La.App. 3d Cir.1988), writ denied, 541 So.2d 868 (La.1989).
In the case sub judice, Defendant made two statements to the police during the investigation admitting in both statements that he shot at the victim. Jenkins, Bursey and Ford testified that, while they were in the vehicle, they saw Defendant shoot the victim at close range. In addition, as previously discussed herein, Defendant did not prove by a preponderance of the evidence that Fuller provoked him. Viewed in a light most favorable to the prosecution, we find that the testimony and evidence were legally sufficient and would justify any rational jury's finding that Defendant had the specific intent to kill or inflict great bodily harm, without provocation, when he fired his weapon at Fuller at close range. Defendant's assignment of error is without merit.

CONCLUSION
For the foregoing reasons, the conviction of Gary Wayne Brooks is affirmed.
AFFIRMED.