MOORE, J.
liLentone Jones was indicted for the second degree murder of LeJuan Shehee, in violation of La. 14:30.1. Found guilty by a unanimous jury, Jones was sentenced to life imprisonment without the benefit of parole, probation or suspension of sentence. He now appeals his conviction and sentence. We affirm.
Facts
After several weeks of ongoing tensions and disputes in Ringgold, Louisiana, Len-tone Jones went to LeJuan Shehee’s house allegedly to settle the dispute. The two men exchanged heated words and agreed to a physical fight. When Shehee turned his back on Jones to remove his shirt for the impending brawl, Jones shot him. Shehee attempted to run, but tripped and fell, whereupon Jones stood over him and fired three more shots into his body.
Shehee’s relatives and friends, who witnessed the event, frantically drove him to the nearest ambulance. While paramedics attempted to save the victim’s life, Jones turned himself in. Ultimately, Shehee succumbed to his wounds.
As noted, a Bienville Parish grand jury indicted Jones for second degree murder, La. R.S. 14:30.1. A unanimous jury convicted him as charged. After his motions for new trial and post verdict judgment of acquittal were denied, Jones waived sentencing delays and the court sentenced him to the mandatory life term at hard labor without benefit of parole, probation or suspension of sentence. This appeal followed.
| ^Discussion
By his first assignment of error, Jones contends the evidence was insufficient to prove he was guilty of second degree murder beyond a reasonable doubt. Specifically, Jones argues that he should have been convicted of manslaughter because the murder was committed in heat of blood and sudden passion. For three weeks preceding the shooting, Shehee had been in skirmishes with the defendant’s sister and her friend, Stacy Thomas, with no police intervention. After numerous threatening text messages, Jones went to confront Shehee, and he was faced with a large, hostile crowd which had previously threatened him. He asserts that incident as the reason he drew his weapon and fired. Jones contends that sufficient provocation existed to reduce the charge of second degree murder to manslaughter.
The state argues it established the essential elements of second degree murder beyond a reasonable doubt, and that the evidence presented by the defense was insufficient to support a reduced finding of manslaughter.
*759 The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with |oa vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2 Cir. 8/30/02), 827 So.2d 508, writ denied, 2002-3090 (La.11/13/03), 858 So.2d 422.
The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, as is the case here, the testimony of state witnesses, obviously believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Wiltcher, 41,981 (La.App. 2 Cir. 5/9/07), 956 So.2d 769; State v. Burd, 40,480 (La. App. 2 Cir. 1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35.
Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1. Specific intent is that state of mind that exists when the |4circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); State v. Davies, 35,783 (La.App. 2 Cir. 4/05/02), 813 So.2d 1262, writ denied, 2002-1564 (La.5/9/03), 843 So.2d 389. Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. La. R.S. 14:10(1); State v. Draughn, 2005-1825 (La.01/17/07), 950 So.2d 583, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377.
The determination of whether the requisite intent is present in a criminal case is made by the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982). In reviewing the correctness of such a determination, the court should review the evidence in a light most favorable to the prosecution and must determine if the evidence is sufficient to convince a reasonable trier of fact of the guilt of the defendant beyond a reasonable doubt as to every element of the offense. Jackson v. Virginia, supra; State v. Huizar, supra.
The discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person. State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997); State v. Dooley, 38,763 (La.App. 2 Cir. 9/22/04), 882 *760 So.2d 731, unit denied, 2004-2645 (La.2/18/05), 896 So.2d 30; State v. Brooks, 36,855 (La.App. 2 Cir. 3/05/03), 839 So.2d 1075, writ denied, 2003-0974 (La.11/07/03), 857 So.2d 517.
|sLa. R.S. 14:31 defines manslaughter as:
A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed.
The Louisiana Supreme Court, in State v. Lombard, 486 So.2d 106 (La.1986), explained the distinction between manslaughter and murder:
[T]he presence of “sudden passion” or “heat of blood” distinguishes manslaughter from murder. The court has stated on several occasions, however, that “sudden passion” and “heat of blood” are not elements of the offense of manslaughter; rather, they are mitigatory factors in the nature of a defense which exhibit a degree of culpability less than that present when the homicide is committed without them. State v. Tompkins, 403 So.2d 644 (La.1981); State v. Temple, 394 So.2d 259 (La.1981); State v. Peterson, 290 So.2d 307 (La.1974). Since they are mitigatory factors, a defendant who establishes by a preponderance of the evidence that he acted in a “sudden passion” or “heat of blood” is entitled to a manslaughter verdict. Where such proof has been introduced, a second degree murder verdict is inappropriate.
In State v. Brooks, supra, we explained what acts do not constitute provocation. We stated:
Provocation is a question of fact to be determined by the trier of fact.... Provocative acts held to rise to the level of mitigating conduct have involved physical threats or actions on the part of the victim. See State v. Lombard, supra, and State v. Ruff, 504 So.2d 72 (La.App. 2 Cir.1987), writs denied, 508 So.2d 64 and 65 (La.1987). Moreover, our courts have not derogated from the principle that “mere words or gestures, however offensive or insulting, will not reduce homicide from murder to manslaughter.” State v. Massey, 535 So.2d 1135 (La.App. 2 Cir.1988); State v. Conerly, 48 La. Ann. 1561, 21 So. 192 (La.1896).
After viewing the instant evidence under the Jackson standard, we |fihold that the evidence is sufficient to support every element of second degree murder. Following the shooting and after being given his Miranda rights, Jones confessed to Officer Randy Price in a recorded confession that was played for the jury in its entirety. Testifying witnesses Darrell Arrington, Lamont Arrington, Keenan Johnson, Dom-inque Hullaby and Ursula Scott all identified the defendant as the man who shot the victim. The defendant’s statement and the eyewitnesses’ testimony established that he shot the victim at close range, which is sufficient to prove his specific intent to kill or inflict great bodily harm. State v. Seals, supra; State v. Dooley, supra; State v. Brooks, supra. There is also physical evidence that the victim died from the gunshot wounds. It was up to the trier of fact to make a credibility determination and weigh the evidence.
In reviewing the defense’s claim of self-defense, this court must determine whether a rational trier of fact, viewing the evidence in the light most favorable to the *761 prosecution, could have found that the mitigatory factors were not established by a preponderance of the evidence. State v. Jackson, 34,076 (La.App. 2 Cir. 12/6/00), 774 So.2d 1046; see also Jackson v. Virginia, supra; Moore v. Duckworth, 443 U.S. 713, 99 S.Ct. 3088, 61 L.Ed.2d 865 (1979); State v. Roy, 395 So.2d 664 (La.1981).
The evidence establishes that Jones went looking for the victim in order to settle the tensions that were mounting over the previous weeks. Jones went to confront Shehee while armed with a .38 caliber pistol. The only evidence of provocation on the part of the Shehee was the testimony that he sent threatening text messages to Jones, although no specifics were 17provided. Regardless, mere words or gestures will not reduce homicide from murder to manslaughter. State v. Massey, supra; State v. Conerly, supra.
There was no evidence that the victim provoked the defendant when they were face-to-face, other than the defendant’s self-serving statements made to the police during his confession. Considering the totality of the record, a rational trier of fact could have concluded that a preponderance of the evidence did not establish the mitigating factors for manslaughter. This assignment is therefore without merit.
By his second assignment of error, Jones contends that the trial court erred by allowing gruesome and redundant photographs of Shehee’s body to be introduced at trial. Specifically, he claims that the trial court erred in allowing the photograph of the deceased victim’s body after he received medical attention—not as he appeared at the scene immediately after the shooting. The defense alleges that the photographs were cumulative, thus their prejudicial effect outweighed any probative value.
The state argues that the pictures show the condition of the decedent when police discovered him, and the lifesaving measures attempted. The state alleges that there is nothing more gruesome about the photos than what is routinely depicted in photos of gunshot victims regularly admitted in murder trials.
La. C.E. art. 403 provides in pertinent part, “Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.” Photographs which illustrate any fact, | Sshed light upon any fact or issue in the case, or are relevant to describe the person, place or thing depicted, are generally admissible. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
In State v. Eaton, 524 So.2d 1194 (La.1988), the supreme court explained the well-settled guidelines regarding the introduction of photographs:
The mere fact a photograph is gruesome does not in and of itself render a photograph inadmissible. The test of admissibility is whether the probative value outweighs any prejudicial effect which may result from the display to the jury. State v. Comeaux, 514 So.2d 84 (La.1987); State v. Beach, 320 So.2d 142 (La.1975); State v. Morris, 245 La. 175, 157 So.2d 728 (1963). Generally, photographs of a victim’s body which depict the fatal wounds are relevant to prove the corpus delicti, to establish the identity of the victim, the location, severity and number of wounds, and to corroborate other evidence of the manner in which the death occurred. Comeaux, 514 So.2d at 96. The trial court’s admission of an allegedly gruesome photograph will be overturned on appeal only if the prejudicial effect clearly outweighs the probative value. No error will be *762 found unless the photographs are so gruesome as to overwhelm the juror’s reason and lead them to convict the defendant without sufficient other evidence. State v. Perry, 502 So.2d 543 (La.1986).
The police were not present at the scene of the shooting, and were thus unable to photograph the victim as he appeared immediately afterward. One photograph depicts a frontal view of the victim showing the bullet wounds, while the other photograph was taken from the back where two bullet wounds are visible.
Though the photographs are not pleasant, they hardly seem to qualify as gruesome. Moreover, the defense merely alleges that the photographs are prejudicial. They were introduced to establish the identity of the victim, the | Allocation, severity and number of wounds, and to corroborate other evidence of the manner in which the death occurred. As such, the trial court properly admitted the photographs. State v. Comeaux, supra. This assignment of error is without merit.
By his third assignment, Jones contends that the trial court erred by allowing the introduction of an audiotaped statement without the proper foundation as required in State v. Hennigan, 404 So.2d 222 (La.1981), for allowing the recorded statement into evidence. Jones claims the error is not harmless and requires reversal.
The state argues that a proper foundation was laid before the tape was played for the court. The state alleges that all requirements were met and thus, the trial court did not err in allowing the introduction of the audio taped statement.
La. R.S. 15:450 provides, in pertinent part:
Every confession ... sought to be used against anyone must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford.
The Louisiana Supreme Court, in State v. Hennigan, supra, set forth the factors for establishing a foundation for admissibility of an audio recording. These factors were derived from United States v. Starks, 515 F.2d 112 (3d Cir.1975). Starks held that a foundation must be established by showing the following facts:
(1) That the recording device was capable of taking the conversation now offered in evidence.
(2) That the operator of the device was competent to operate the device.
| in(3) That the recording is authentic and correct.
(4) That changes, additions or deletions have not been made in the recording.
(5) That the recording had been preserved in a manner that is shown to the court.
(6) That the speakers are identified.
(7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.
Before a confession can be introduced into evidence, the state must affirmatively prove that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La. R.S. 15:451; La. C. Cr. P. art. 703 D; State v. Anderson, 2006-2987 (La.9/9/08), at 24, 996 So.2d 973, 994; State v. Bowers, 39,970 (La.App. 2 Cir. 8/19/05), 909 So.2d 1038. The state must also establish that an accused who makes a statement during custodial interrogation was first advised of his Miranda rights. Id.; State v. Franklin, 35,268 (La.App. 2 Cir. 12/19/01), 803 So.2d 1057, writ denied, 02-0352 (La.02/07/03), 836 So.2d 85.
*763 The admissibility of a confession is a question for the trial court. When determining admissibility, the trial court’s conclusions on the credibility and weight of testimony relating to the voluntary nature of the confession will not be overturned on appeal unless not supported by the evidence. State v. Anderson, supra. Great weight is placed upon the trial court’s factual determinations because of its opportunity to observe witnesses and assess credibility. Id. Testimony of the interviewing police officer alone may be sufficient to prove that the statement was given freely |nand voluntarily. State v. Bowers, supra.
Although not complained of by the defense, the state complied with La. R.S. 15:450, when the transcript and the recording were made available to defense counsel through discovery.
The defense does not specifically allege how the state failed to lay the proper foundation, but rather makes a general allegation. Deputy Price produced the cassette tape and identified it in open coui’t. He stated that he was able to identify the tape from his handwriting which included the defendant’s name, Len-tone Jones; that it was a homicide; the date, 5-17-07; and the victim’s name, Le-Juan Shehee. Dep. Price testified that he removed a tab from the cassette after taking the statement so that it could not be accidentally erased or altered. The cassette has been in Price’s possession since he took the statement except when it was transcribed by a sheriffs office employee. Dep. Price testified that he read the transcript and found it was an accurate transcription of what is recorded on the audio portion of the tape. Following objections made by the defense counsel, which were overruled, the entire statement was played for the jury.
A review of the trial transcript and the audio taped confession reveals that the state laid a proper foundation prior to playing the statement for the jury. La. R.S. 15:450; State v. Hennigan, supra. Thus, the trial court did not err in allowing the recording to be admitted into evidence. This assignment is therefore without merit.
By his fourth assignment of error, Jones contends that the sentence imposed is excessive for this offender and offense. He argues that although |12the life sentence is within the range authorized by the legislature, it is unconstitutionally excessive in that it serves no other purpose than the needless imposition of suffering.
The state argues that when there is a mandatory sentence under the statute, as is the case here, there is no need for the trial court to justify a sentence it is legally required to impose. The state observes in brief that the argument that the mandatory life sentence for second degree murder is a violation of the prohibition against excessive punishment in the Louisiana Constitution has been regularly and soundly rejected.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. Second, a sentence violates La. Const. Art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980).
Where there is a mandatory sentence, there is no need for the trial court to justify, under Art. 894.1, a sentence it is *764 legally required to impose. State v. Burd, supra; State v. Koon, 31,177 (La.App. 2 Cir. 2/24/99), 730 So.2d 503.
The mandatory sentence for second degree murder is punishment by life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. La. R.S. 14:30.1 B. The argument that the | ^mandatory life sentence for second degree murder is a violation of the prohibition against excessive punishment in the Louisiana Constitution has been repeatedly rejected. State v. Parker, 416 So.2d 545 (La.1982); State v. Brooks, 350 So.2d 1174 (La.1977); State v. Roberson, 40,809 (La.App. 2 Cir. 4/19/06), 929 So.2d 789.
In State v. Dorthey, supra, and State v. Johnson, 1997-1906 (La.3/4/98), 709 So.2d 672, the supreme court addressed the issue of mandatory sentences in the context of the habitual offender law. The court held that the downward departure from a mandatory minimum sentence may occur in rare circumstances if the defendant rebuts the presumption of constitutionality by showing clear and convincing evidence that he is exceptional, namely, that he is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the gravity of the offense, the culpability of the offender, and the circumstances of the case. This rule has been extended to mandatory sentences beyond habitual offender cases. State v. Fobbs, 1999-1024 (La.9/24/99), 744 So.2d 1274; State v. Chandler, 41,063 (La.App. 2 Cir. 9/8/06), 939 So.2d 574, writ denied, 2006-2554 (La.5/11/07), 955 So.2d 1277. However, the “rare circumstances” described by Johnson in which a mandated sentence can be altered are even less likely in the case of a life sentence chosen by the legislature for a single crime, such as aggravated rape or second degree murder. State v. Chandler, supra. In such crimes, unlike the mandatory minimum sentence under the habitual offender law, the “tailoring” of the sentence by the legislature was for life because the culpability of offenders 114and the gravity of the offense are so great. Id.
The defendant has failed to show by clear and convincing evidence that his particular circumstances are an exception to the constitutional application of his mandatory sentence. State v. Dorthey, supra; State v. Johnson, supra. The defendant’s sentence of life imprisonment without the benefit of parole, probation or suspension of sentence does not shock the sense of justice in light of the crime committed and the likely risk of harm to others who happen to not get along with the defendant. This assignment is therefore without merit.
Conclusion
Finally, we have reviewed the entire record and find nothing we consider to be error patent. La. C. Cr. P. art. 920(2). For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.