GASKINS, J.
11 Following a jury trial, the defendant, Tyrus Tremaine Johnson, was convicted as charged of second degree murder. The trial court imposed the mandatory sentence of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The defendant appeals. We affirm the defendant’s conviction and sentence.
FACTS
On October 23, 2003, the 74-year-old victim, Charley Ferlito, was shot and killed on his front porch. There were no witnesses to the shooting, and no arrests were made at that time.
On August 7, 2008, the defendant went to the Shreveport Police Department. He initially told the police that a gun he once owned might have been used in a crime. He returned later that same day and gave a statement to the police in which he implicated himself in the victim’s murder. He was arrested and charged with second degree murder.
The defendant filed a pro se motion to suppress his statement to the police which was adopted by defense counsel. Following a hearing, the motion was denied.
Defense counsel requested appointment of a sanity commission. The doctors on the panel agreed that the defendant was competent to assist in his defense; they also opined that at the time of the offense, he was not suffering from any mental disease or defect that prevented him from distinguishing right from wrong. Based upon the doctors’ reports, the trial court found that the defendant was competent to proceed.
|2Following a jury trial in March 2011, the defendant was convicted as charged. Prior to sentencing, the trial court denied the defendant’s motion for mistrial, motion *1216 for new trial, motion in arrest of judgment, and motion to deviate from a mandatory sentence. The trial court imposed the mandatory term of life imprisonment without benefit of parole, probation or suspension of sentence. The defendant’s timely motion for reconsideration of sentence was denied.
The defendant appealed, asserting three assignments of error. Pursuant to well-settled law, we first consider the assignment of error pertaining to sufficiency of the evidence. See State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,-253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
SUFFICIENCY OF EVIDENCE
In this assignment of error, the defendant contends that the trial court erred in denying his motion for new trial, which was filed pursuant to La. C. Cr. P. art. 851(1), asserting that the verdict was contrary to the law and the evidence.

Law

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.1/9/08), 974 So.2d 181, writ denied, 2008-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La. App.2d Cir.1/14/09), 1 So.3d 833, writ denied, 2009-0310 (La. 11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 2009-0725 (La.12/11/09), 23 So.3d 913; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App.2d Cir.2/13/08), 975 So.2d 753; State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35.
The primary purpose of the rule requiring corroboration of confessions is to test the reliability of a confession and thereby prevent an erroneous conviction based solely on an untrue confession. State v. Martin, 93-0285 (La.10/17/94), 645 So.2d 190, cert. denied, 515 U.S. 1105, 115 S.Ct. 2252, 132 L.Ed.2d 260 (1995); State v. Lane, 33,059 (La.App.2d Cir.3/3/00), 755 So.2d 368, writ denied, 2000-1380 (La.4/20/01), 790 So.2d 15.
The offense of second degree murder is defined by La. R.S. 14:30.1, which provides in pertinent part:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
*1217 (2) When the offender is engaged in the perpetration or attempted perpetration of ... armed robbery, first degree robbery, second degree robbery, simple robbery, ... even though he has no intent to kill or to inflict great bodily harm.

Discussion

The evidence produced at trial established that the elderly victim was at his residence shortly before 8:00 p.m. on October 23, 2003. His daughter and her husband, who lived with him, were in their bedroom. They heard the victim go to the front door and tell someone that his dog would not bite. They then heard a gunshot. The daughter ran to the victim, who was lying on the front porch in a pool of blood. He had been shot once in the left chest; the bullet exited through his left back. The daughter began screaming for help as she cradled her dying father’s head in her lap. Her husband called 911. Emergency personnel tried unsuccessfully to resuscitate the victim.
The police found an expended 9-millime-ter cartridge casing near a truck in the front yard. A 9-millimeter bullet was located on a bar in the kitchen, where it had fallen after striking the wall. An autopsy revealed that the bullet had hit the victim’s rib, left lung and aorta.
| ¿Five years later, the defendant gave a statement to the police in which he recounted that a woman he knew had told him and another man that the victim had money. According to the defendant, he and the other man decided to rob the victim. They stalked the victim and followed him home in the defendant’s vehicle. According to the defendant, the victim sent his dog outside. The defendant stated that his accomplice originally had possession of a 9-millimeter pistol that the defendant purchased at a pawn shop a few months beforehand. The defendant took the weapon from the accomplice and “ran up” to the victim. The defendant asserted that the victim grabbed the gun and that it accidentally discharged. The defendant also told the police that he had gotten rid of the gun.
During the ensuing investigation, the police corroborated portions of the defendant’s statement. When the defendant went for a ride with two officers, he showed them where the crime occurred and how he approached the house. The defendant knew details of the crime which included the gun caliber, the number of shots, where the victim was lying, his race and age, and the time of year when the murder occurred. The forensic evidence indicated that the fatal 9-millimeter bullet was fired from a Hi-Point firearm. The police verified that the defendant had, in fact, purchased a Hi-Point 9-millimeter pistol at a pawn shop in September 2003. The defendant mentioned the victim’s dog; the victim’s relatives stated that they heard the victim telling someone that the dog would not bite just before the shot was fired.
IfiThe defendant followed the victim to his home armed with a firearm with the intention of participating in an armed robbery of the victim. The defendant claimed that at the time of the killing, he had taken the gun from his accomplice and had ceased in his intention to rob the victim. However, this assertion is belied by the defendant’s own account whereby, when the elderly victim came out of his house, instead of immediately leaving the scene, the defendant “ran up” to him, coming close enough for the victim to grab the gun.
Viewed in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of second degree murder proven beyond a rea *1218 sonable doubt. This assignment of error is meritless.
MOTION TO SUPPRESS
The defendant argues that the trial court erred in denying his motion to suppress his inculpatory statement to the police.

Law

At a hearing on a motion to suppress a confession, the state bears the burden of proving the free and voluntary nature of the confession beyond a reasonable doubt. State v. Hills, 354 So.2d 186 (La.1977); State v. Roddy, 33,112 (La.App.2d Cir.4/7/00), 756 So.2d 1272, writ denied, 2000-1427 (La.5/11/01), 791 So.2d 1288.
Great weight is placed upon the trial court’s ruling on a motion to suppress in regard to the finding of facts because it had the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Crews, 28,153 (La. App.2d Cir.5/8/96), 674 So.2d 1082. Accordingly, on 17appeal, the trial court’s ruling on a motion to suppress is reviewed under the manifest error standard with regard to factual determinations, while its findings of law are subject to de novo review. State ex rel. Thibodeaux v. State, 2001-2510 (La.3/8/02), 811 So.2d 875; State v. Hemphill, 41,526 (La.App.2d Cir.11/17/06), 942 So.2d 1263, writ denied, 2006-2976 (La.3/9/07), 949 So.2d 441.
 Before a confession can be introduced into evidence, the state must show that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. See La. R.S. 15:451; La. C. Cr. P. art. 703(D); State v. Bowers, 39,970 (La.App.2d Cir.8/19/05), 909 So.2d 1038; State v. Roddy, supra. The state must also establish that an accused who makes a statement during a custodial interrogation was first advised of his Miranda rights. State v. Franklin, 35,268 (La.App.2d Cir.12/19/01), 803 So.2d 1057, writ denied, 2002-0352 (La.2/7/03), 836 So.2d 85; State v. Horn, 45,706 (La.App.2d Cir.11/3/10), 55 So.3d 100, writ denied, 2010-2721 (La.5/6/11), 62 So.3d 124.

Discussion

A hearing was held on the defendant’s motion to suppress; the only witness to testify was the police detective who took the defendant’s statement. The recorded statement was played in court and the written rights waiver form signed by the defendant was admitted into evidence.
The evidence demonstrated that the defendant told the detective that he had a 12th grade education and that he could read and write. The 18detective orally advised the defendant of his Miranda rights. Thereafter, the defendant also signed the rights waiver form. The detective testified that the defendant was not coerced, threatened or harmed in any way; nor were any promises made to the defendant to induce him to make a statement. Furthermore, the defendant denied having any mental defects. Although relatives of the defendant later told the detective that the defendant — who had served in the military — suffered from posttraumatic stress, this information was imparted to him after the defendant made his statement.
Based upon our review of the record, we find no error in the trial court’s conclusion that the defendant’s statement was made freely and voluntarily or in its ruling denying the motion to suppress. This assignment of error lacks merit.
EXCESSIVE SENTENCE
In his final assignment of error, the defendant argued that the trial court erred in imposing the mandatory penalty for second degree murder.

*1219
Law

The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. Second, a sentence violates La. Const, art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Jones, 45,429 (La. App.2d Cir.8/11/10), 46 So.3d 756.
|9Where there is a mandatory sentence, there is no need for the trial court to justify, under La. C. Cr. P. art. 894.1, a sentence it is legally required to impose. State v. Koon, 31,177 (La.App.2d Cir.2/24/99), 730 So.2d 503.
The mandatory sentence for second degree murder is punishment by life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. La. R.S. 14:30.1(B). The argument that the mandatory life sentence for second degree murder is a violation of the prohibition against excessive punishment in the Louisiana Constitution has been repeatedly rejected. State v. Parker, 416 So.2d 545 (La.1982); State v. Roberson, 40,809 (La.App.2d Cir.4/19/06), 929 So.2d 789.
In State v. Dorthey, 623 So.2d 1276 (La. 1993), and State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, the supreme court addressed the issue of mandatory sentences in the context of the habitual offender law. The court held that the downward departure from a mandatory minimum sentence may occur in rare circumstances if the defendant rebuts the presumption of constitutionality by showing clear and convincing evidence that he is exceptional, namely, that he is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the gravity of the offense, the culpability of the offender, and the circumstances of the case. This rule has been extended to mandatory sentences beyond habitual offender cases. State v. Fobbs, 99-1024 (La.9/24/99), 744 So.2d 1274; State v. Chandler, 41,063 (La.App.2d Cir.9/8/06), 939 So.2d 574, writ denied, 2006-2554 (La.5/11/07), 955 So.2d 1277. However, the “rare | i0circumstances” described by Johnson in which a mandated sentence can be altered are even less likely in the case of a life sentence chosen by the legislature for a single crime, such as aggravated rape or second degree murder. In such crimes, unlike the mandatory minimum sentence under the habitual offender law, the “tailoring” of the sentence by the legislature was for life because the culpability of offenders and the gravity of the offense are so great. State v. Chandler, supra; State v. Jones, supra.

Discussion

The defendant contends that, because the trial court noted that the defendant apparently had remorse which caused him to come forward, it was error for the court to not impose a lesser sentence.
The defendant has failed to show by clear and convincing evidence that his particular circumstances are an exception to the constitutional application of his mandatory sentence. State v. Dorthey, supra; State v. Johnson, supra. This senseless crime happened after the defendant followed the victim home because someone told him that the victim “had money.” The death of the victim occurred at the hands of the defendant during an attempted armed robbery. As such, the legislatively mandated sentence is life imprisonment without benefits.
This assignment of error is meritless.
*1220 ERROR PATENT
The trial court failed to advise the defendant of his rights under La. C. Cr. P. art. 980.8. The defendant is hereby advised that no application for postconviction relief shall be considered if filed more than two years after lnthe judgment of conviction and sentence has become final. State v. Gipson, 45,121 (La.App.2d Cir.4/14/10), 34 So.3d 1090, writ denied, 2010-1019 (La.11/24/10), 50 So.3d 827.
CONCLUSION
The defendant’s conviction and sentence are affirmed.
AFFIRMED.