Judgment rendered January 11, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,886-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                    Appellee

versus

ROTRICK DEON IVORY                    Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 374,450

Honorable Ramona Emanuel, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Edward K. Bauman

ROTRICK DEON IVORY                    Pro Se

JAMES E. STEWART, SR.                 Counsel for Appellee
District Attorney

SAMUEL S. CRICHTON
NANCY F. BERGER-SCHNEIDER
TOMMY J. JOHNSON
Assistant District Attorneys

* * * * *

Before PITMAN, THOMPSON, and HUNTER, JJ.

**PITMAN, J.**

A jury found Defendant Rotrick Deon Ivory guilty as charged of second degree murder and guilty of the responsive verdict of simple battery. The trial court sentenced him to concurrent sentences of life imprisonment for the second degree murder conviction and six months in the parish jail for the simple battery conviction. Defendant appeals his conviction and sentence for second degree murder. For the following reasons, we affirm.

## FACTS

On June 29, 2020, the state filed an indictment charging Defendant with one count of second degree murder and one count of aggravated battery. It alleged that on or about May 8, 2018, Defendant committed the second degree murder of Michael Smith and committed a battery with a dangerous weapon upon Tasha Brown. Defendant pled not guilty.

A jury trial began on September 15, 2021. C.B. testified that in May 2018, she was 13 years old and lived with her mother Tasha Brown and sisters K.S. and T.B. in the Peach Street Apartments in Shreveport. She stated that Michael Smith, her mother's boyfriend, sometimes stayed at the apartment. She testified that on the morning of May 8, 2018, she was at the apartment with her mother, Smith, K.S. and a one-year-old cousin. C.B. was getting ready for school and caring for her cousin while her mother and Smith slept in her mother's bedroom. She heard someone beating on the door and saw her mother leave her bedroom and walk to the door. Her mother cracked open the door and told the man at the door that he could not come in. The man then pushed the door open and hit her mother in the face with a handgun. C.B. heard four or five gunshots and ran out of the apartment with her cousin. She saw the man drive out of the apartment

complex in a white car. When she returned to the apartment, she saw a body under the bed. C.B. identified the man at the door as Defendant, whom her mother previously dated.

Tasha Brown testified that in 2018, she lived in the Peach Street Apartments with her daughters C.B., K.S. and T.B. She stated that she and Defendant were in a two-year relationship that ended in December 2017, he lived at the apartment during that time and he is the father of T.B. After she and Defendant broke up, she began dating Smith. Smith spent the night at her apartment on May 7, 2018, and C.B., K.S. and a one-year-old cousin were also present. On the morning of May 8, 2018, she awoke to a knock at the door. She cracked open the door, and Defendant was there. He asked to enter, and she refused. He then pushed open the door and hit her in the face with a handgun. She noted that her lip was swollen and bleeding. She fell on the couch and saw Defendant run toward her bedroom where Smith was getting out of bed. She heard a gunshot from the bedroom, ran out of the apartment and then heard more gunshots coming from her apartment. She went to her neighbor's apartment and asked her to call 911. She did not see Defendant leave the apartment but did see him drive away from the apartment complex in a white vehicle. She returned to her apartment after law enforcement arrived. She then saw Smith on the floor under the bed. Law enforcement took her, C.B. and K.S. to the police station to make statements. She testified that a week later, Defendant called to apologize.

K.S. testified that in May 2018, she lived in the Peach Street Apartments with her mother and two sisters. She identified Defendant as her sister's father. At approximately 6:15 a.m. on May 8, 2018, she was in her bedroom and heard gunshots coming from inside the apartment. She left her

2

room, saw Smith on the floor of her mother's bedroom and saw Defendant running down the stairs. She called Defendant's name, and he turned and looked at her. She asked him, "Why you did it?" and he turned around and left. She stated that she did not see anyone shoot a gun, but she knew it was Defendant because he was the only person who had a gun.

Shalonda Scott testified that in May 2018, she lived next door to Brown and her daughters at the Peach Street Apartments. She knew Defendant from when he lived with Brown and had met her new boyfriend Smith. On the morning of May 8, 2018, she heard through the thin apartment walls Brown say, "No, Mane Mane" followed by five or six gunshots. She noted that "Mane Mane" is Defendant's nickname. Scott then looked out of her window and saw Defendant running away from Brown's apartment. She went to Brown's apartment and saw Smith under the bed. She noted that his leg was shaking, and when she called his name, he did not answer. She looked under the bed and saw a puddle of blood. She then went back to her apartment to call 911.

Detective Taywania Jackson of the Shreveport Police Department testified that on May 8, 2018, she arrived at the Peach Street Apartments between 7:00 and 8:00 a.m. and entered Brown's apartment. She noted that there was no sign of a struggle inside the apartment. She stated that the deceased was located in the master bedroom on the floor beside the bed, that there was a lot of blood and that it was evident he had been shot. She later learned that the fire department pulled Smith out from under the bed to attempt to render aid. She then went to the police station to interview Brown, C.B. and K.S., who all identified Defendant as the shooter. Det. Jackson identified photographs of the scene, including those of apparent

gunshot wounds to Smith's body. She identified evidence collected from the scene, including six 9-millimeter expended cartridges from the master bedroom. As part of the investigation, she interviewed Defendant's girlfriend and confirmed that he drove her vehicle, a white Chevrolet HHR.

Lieutenant Michael Shawn Hinderberger of the Shreveport Police Department testified that on May 8, 2018, he arrived at the Peach Street Apartments between 7:15 and 7:30 a.m. He identified six expended shell casings from the scene and noted that three were Winchester 9-millimeter, two were RP 9-millimeter and one was a 9-millimeter from another brand. Later that morning he went to Defendant's residence to oversee the execution of a search warrant. Officers recovered an empty box of Winchester 9-millimeter ammunition and a box of ammunition that included eight live rounds of Winchester 9-millimeter, three live rounds of RP 9-millimeter and one round from another brand. A pair of red and white Nike Air Jordans were recovered, which matched the description of shoes Defendant was reported to be wearing when he fled the scene. He stated that a handgun has not been found in connection to this case. On October 5, 2018, he received a notification that Defendant had been arrested in Gregg County, Texas.

Dr. Long Jin, who was accepted as an expert in the field of forensic pathology, testified that he conducted the autopsy of Smith on May 8, 2018. He identified a diagram he prepared of the body and photographs he took of the body. He detailed the eight gunshot wounds to Smith's body and noted that both lungs were punctured and the pulmonary trunk and aortic root were lacerated. Dr. Jin stated that Smith's cause of death is multiple gunshot wounds and the manner of death is homicide.

4

The state rested, and the defense called Lajuana Michelle Ivory. Ivory, Defendant's mother, testified that her son is kind and thoughtful. She stated that she has a great relationship with her granddaughter T.B. and that Defendant is attentive to his daughter. She stated that on May 8, Defendant took money to Brown for T.B.'s field day, and she does not know what happened after that.[1] She stated that Defendant lived with her in May 2018 and that he drove his girlfriend's white HHR.

On September 17, 2021, the jury found Defendant guilty as charged of second degree murder and guilty of the responsive verdict of simple battery.

Defendant filed a motion for post-verdict judgment of acquittal. The court denied the motion.

A sentencing hearing was held on October 25, 2021. As to the second degree murder conviction, the trial court sentenced Defendant to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. As to the simple battery conviction, the trial court sentenced Defendant to six months in the parish jail with credit for time served. The trial court ordered the sentences to run concurrently.

Defendant appeals his conviction and sentence for second degree murder.

## DISCUSSION

*Sufficiency of the Evidence*

In his first assignment of error, Defendant argues that the evidence presented at trial was insufficient to sustain a conviction of second degree

---

[1] The defense also proffered additional testimony from Ivory. She stated that Defendant told her that he talked to Brown on May 7, 2018, about money for T.B.'s field day and that she wanted Defendant to bring her the money rather than Ivory. Ivory opined that Brown wanted Defendant to see that she had someone else at her house.

murder. He states that there is no indication that he had the specific intent to kill or inflict great bodily harm on Smith and that no one saw him shoot Smith. He contends that the record supports, at most, a responsive verdict of manslaughter.

The state argues that the evidence presented at trial supports the conviction of second degree murder. It asserts that Defendant forcefully entered the apartment, went directly to the bedroom, fired multiple rounds at Smith and then fled the scene. It notes that Defendant does not argue that he did not kill Smith but, instead, argues that the jury should have returned a verdict of manslaughter. It contends that Defendant abandoned any argument that he was not the person who fired the shots that killed Smith.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Hearold*, 603 So. 2d 731 (La. 1992); *State v. Smith*, 47,983 (La. App. 2 Cir. 5/15/13), 116 So. 3d 884. *See also* La. C. Cr. P. art. 821. This standard does not provide an appellate court with a vehicle for substituting its appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517. The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 62 (2000). The appellate court does not assess credibility or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442.

6

The *Jackson* standard is applicable in cases involving both direct and circumstantial evidence. *State v. Allen*, 36,180 (La. App. 2 Cir. 9/18/02), 828 So. 2d 622, *writs denied*, 02-2595 (La. 3/28/03), 840 So. 2d 566, and 02-2997 (La. 6/27/03), 847 So. 2d 1255, *cert. denied*, 540 U.S. 1185, 124 S. Ct. 1404, 158 L. Ed. 2d 90 (2004). An appellate court reviewing the sufficiency of the evidence must resolve any conflict in the direct evidence by viewing it in a light most favorable to the prosecution. *Id.* When the direct evidence is thus viewed, the facts established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *Id.*

Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. *State v. Broome*, 49,004 (La. App. 2 Cir. 4/9/14), 136 So. 3d 979, *writ denied*, 14-0990 (La. 1/16/15), 157 So. 3d 1127. If a case rests essentially upon circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; *State v. Broome*, *supra*.

La. R.S. 14:30.1 provides, in pertinent part, that second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm.

Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent need not be proven as a fact and may be inferred from the defendant's actions and the circumstances of the transaction. *State v. Brown*, 03-0897 (La. 4/12/05), 907 So. 2d 1. Deliberately pointing and firing a deadly weapon at close

*8*

range are circumstances that will support a finding of specific intent to kill. *Id.* Specific intent to kill or inflict great bodily harm may be inferred from the extent and severity of the victim's injuries. *State v. Odums*, 50,969 (La. App. 2 Cir. 11/30/16), 210 So. 3d 850, *writ denied,* 17-0296 (La. 11/13/17), 229 So. 3d 924.

> La. R.S. 14:31(A)(1) states that manslaughter is:
>
> A homicide which would be murder under . . . Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed[.]

"Sudden passion" and "heat of blood" are not elements of the offense of manslaughter. *State v. Lombard*, 486 So. 2d 106 (La. 1986). Rather, they are mitigatory factors in the nature of a defense that exhibit a degree of culpability less than that present when homicide is committed without them. *Id.* The defendant bears the burden of proving the presence of the mitigatory factors. *Id.* In reviewing a defendant's claim, the court must determine whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors were not established by a preponderance of the evidence. *Id.*

Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the state proved the essential elements of second degree murder. The state presented sufficient evidence to prove that Defendant killed Smith when he had a specific intent to kill or to inflict great bodily harm. Further, the

8

evidence presented by the state excluded every reasonable hypothesis of Defendant's innocence.

The eight gunshot wounds to Smith's body and the severity of these injuries that caused his death demonstrate Defendant's specific intent to kill or to inflict great bodily harm. Several witnesses identified Defendant as the shooter. Although they did not see Defendant shoot Smith, C.B. and Brown both saw Defendant enter the apartment armed with a handgun, immediately heard gunshots and then saw Defendant leave the apartment complex in a white vehicle. K.S. heard gunshots and saw Defendant running down the stairs from the apartment. Scott heard Brown say "No, Mane Mane" followed by gunshots and then saw Defendant run from the apartment.

Defendant's argument that he should have been convicted of the lesser offense of manslaughter is not supported by the record. Defendant did not meet his burden of proving that he committed the homicide in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. The jury acted reasonably and within its discretion by finding Defendant guilty as charged rather than guilty of manslaughter.

Accordingly, this assignment of error lacks merit.

*Excessive Sentence*

In his second assignment of error, Defendant argues that the trial court erred in imposing a constitutionally excessive sentence, in failing to properly consider La. C. Cr. P. art. 894.1 and in disregarding the fact it had the authority to deviate from the mandatory life sentence. He states that the sentence was not individualized to the offender and that he was not given the

9

opportunity to show that he was an "exceptional" defendant for whom a departure from the statutorily mandated sentence was justified.

The state argues that Defendant has presented nothing to support a reversal of the mandatory sentence of life imprisonment. It notes that Defendant did not object to the sentence at the sentencing hearing and that he did not file a motion for reconsideration of sentence. It also contends that Defendant's case is not one of the rare circumstances in which a downward departure from a mandatory sentence is appropriate.

An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court complied with La. C. Cr. P. art. 894.1. *State v. Smith*, 433 So. 2d 688 (La. 1983). Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Smith*, 01-2574 (La. 1/14/03), 839 So. 2d 1, *citing State v. Bonanno*, 384 So. 2d 355 (La. 1980).

Where there is a mandatory sentence, there is no need for the trial court to justify, under La. C. Cr. P. art. 894.1, a sentence it is legally required to impose. *State v. Burd*, 40,480 (La. App. 2 Cir. 1/27/06), 921 So. 2d 219, *writ denied*, 06-1083 (La. 11/9/06), 941 So. 2d 35. The mandatory sentence for second degree murder is punishment by life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence. La. R.S. 14:30.1(B). Louisiana appellate courts have repeatedly rejected the argument that the mandatory life sentence for second degree murder is a violation of the prohibition against excessive

punishment in the Louisiana Constitution. *State v. Parker*, 416 So. 2d 545 (La. 1982); *State v. Smith*, 49,839 (La. App. 2 Cir. 5/20/15), 166 So. 3d 416, *writ denied,* 15-1244 (La. 6/3/16), 192 So. 3d 753.

To rebut the presumption that the mandatory minimum sentence is constitutional, a defendant must clearly and convincingly show that he is exceptional, which means that because of unusual circumstances he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case. *State v. Johnson*, 97-1906 (La. 3/4/98), 709 So. 2d 672.

The mandatory sentence of life imprisonment for a conviction of second degree murder is presumed to be constitutional, and Defendant failed to demonstrate that he is an "exceptional" defendant for whom a downward departure from the statutory minimum sentence is required. The judge who sentenced Defendant also heard the evidence at trial, including testimony from Defendant's mother, and did not conclude that a downward deviation from the mandatory sentence was warranted. Further, Defendant did not make a contemporaneous objection at the sentencing hearing and did not file a motion to reconsider sentence. Defendant's sentence is not out of proportion to the seriousness of the offense and is not a purposeless or needless infliction of pain and suffering. We find, therefore, that Defendant's life sentence is not unconstitutionally excessive.

Accordingly, this assignment of error lacks merit.

11

## CONCLUSION

For the foregoing reasons, we affirm the convictions and sentences of Defendant Rotrick Deon Ivory.

**AFFIRMED**.