STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

05-553

STATE OF LOUISIANA

VERSUS

JUNIOR RAY FONTENOT

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 22163-03
HONORABLE ROBERT WYATT, DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Jimmie C. Peters, Marc T. Amy, and Elizabeth A. Pickett, Judges.

AFFIRMED; REMANDED WITH INSTRUCTIONS.

Carla S. Sigler
Assistant District Attorney
Post Office Box 3206
Lake Charles, LA    70602
(337) 437-3400
COUNSEL FOR APPELLEE:
    State of Louisiana

Edward K. Bauman
Louisiana Appellate Project
Post Office Box 1641
Lake Charles, LA    70602-1641
(337) 491-0570
COUNSEL FOR DEFENDANT/APPELLANT:
    Junior Ray Fontenot

AMY, Judge.

On December 11, 2003, the defendant was charged with the second degree murder of his wife. During the trial, the defendant filed an oral motion to suppress his videotaped statement. A hearing was conducted outside the presence of the jury, and the motion was denied. On February 25, 2005, a jury found the defendant guilty of second degree murder. The defendant was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Alleging two assignments of error, the defendant appeals. For the following reasons, we affirm and remand with instructions.

**Factual and Procedural Background**

The record shows that the defendant, Junior Ray Fontenot, and his wife, Rufie Mae Gallow, began having marital problems, which ultimately led Ms. Gallow to obtain a protective order against the defendant. Ms. Gallow's daughter, Carl Lynn Gallow Guillory, testified that she and her brother asked the defendant to leave her mother's house in July of 2003. Mrs. Guillory's brother took the defendant to Lake Charles.

The events at issue in the case occurred on November 10, 2003. Charleta Aaron explained that her house is directly across the street from the defendant's house in Lake Charles. Ms. Aaron testified that on November 10th, she woke up to the sound of someone screaming, "Help, call the police." Upon getting out of bed, she peaked through her blinds and saw a woman trying to get into her house. According to Ms. Aaron, while the woman was beating and pulling on the door, the defendant pulled her arm and yanked her down. Ms. Aaron explained that the woman broke loose and started running toward the end of the driveway. She fell and the defendant began dragging her to her car. Ms. Aaron testified that the defendant was

yelling at the woman that he was her husband and "you see how this feel[s]." Ms. Aaron saw the defendant place the woman into the driver's side of a blue Cadillac, move her over to the passenger side, and fasten her seatbelt before taking off in the vehicle. Ms. Aaron later identified the defendant from a photographic lineup as the man she saw that morning.

Cody Chaisson was on his way to school that morning when he heard someone yelling, "Help, call the police!" Mr. Chaisson testified that when he walked to the road, he saw a man standing in the road and a woman lying half in the road and half in Ms. Aaron's driveway. When his mother came outside, he told her to call the police, which she did. Mr. Chaisson saw the woman get up and try to open Ms. Aaron's door, continuously calling for help. The defendant pulled her down and dragged her back to the road. Mr. Chaisson testified that the defendant yelled, "Why did you do this? You're supposed to be my wife . . . Okay, you did what you had to do. You're satisfied. Go home now." The defendant then threw some bags and keys on her chest and told her to go home. According to Mr. Chaisson, the woman appeared to be going in and out of consciousness. Mr. Chaisson watched as the defendant put the woman in the driver's side of the car and pulled her to the passenger's side. Mr. Chaisson testified that the defendant "got in the vehicle and he drove off."

Mr. Chaisson identified the defendant from a photographic lineup, noting that his hair was different. Mr. Chaisson testified that he was thirty or forty yards from the incident and had a clear view of events. According to Mr. Chaisson, he could see a handle in the front of the defendant's pants but was unable to see the blade. He later told his mother and the police that he thought it was either a knife or a gun.

2

Gaynell Chaisson, Cody Chaisson's mother, also testified at the defendant's trial. Ms. Chaisson was getting ready for work that morning when she heard a voice calling for help and for "someone [to] call 911." When she went outside, she saw an older woman being dragged by a man from Ms. Aaron's door to the street. The defendant threw keys at the woman. Ms. Chaisson noticed blood on the right side of the woman's abdomen. Ms. Chaisson testified that the defendant yelled at the woman, "How could you do that? I'm your husband." Ms. Chaisson saw something with a brown handle tucked into the defendant's pants. She watched the defendant put Ms. Gallow in the car and leave the area. Ms. Chaisson later identified the defendant as the man she saw that morning.

Around 7:00 a.m. that morning, Andrew Rider, an employee of Pine Shadows Golf Course, was headed to work. Mr. Rider noticed a vehicle parked on the car path between the sixteenth green and the seventeenth tee, which is in a thickly wooded area about 150-200 yards from I-10. Mr. Rider asserts that the car would not have been visible from I-10. Since there was not supposed to be anyone on the golf course at that time, Mr. Rider approached the car. He heard the woman in the passenger's seat calling for help. Mr. Rider testified that he called 911 immediately after seeing the blood on the woman's shirt. Mr. Rider testified that the woman told him that her husband, Junior Fontenot, had beaten her, stabbed her, taken the keys and run toward the interstate.

Deputy Roy Malone and his trainee were employed by the Calcasieu Parish Sheriff's Office as patrol officers on November 10, 2003. They were dispatched to Ellis and Jones Streets but were unable to locate the blue Cadillac. Deputy Malone later received and responded to a call that a vehicle had been abandoned on Pine

3

Shadows Golf Course, and en route, they were flagged down by Mr. Rider. Deputy Malone testified that Ms. Gallow was in Mr. Rider's truck, and it appeared to him that she had a stab wound to her stomach. When he asked her who had done this to her, she responded, "Junior Fontenot." She also told him that Mr. Fontenot left in the direction of the interstate.

Deputy Cornell Guidry and another deputy later found the defendant walking through a cemetery located on Opelousas Street. The defendant was arrested and read his rights. He subsequently gave a videotaped statement to the authorities, which was introduced at trial.

Although Ms. Gallow was taken by ambulance to the hospital and underwent surgery in an attempt to repair her injuries, she later died as a result of the stab wound.

The defendant was charged with the second degree murder of Ms. Gallow. The defendant's videotaped statement was admitted into evidence. Following a jury trial, the defendant was found guilty as charged. He was sentenced to life in prison at hard labor without benefit of probation, parole or suspension of sentence. The defendant appeals, asserting that there was insufficient evidence to find him guilty of second degree murder and that a Motion to Suppress was improperly denied.

**Discussion**

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by the court for errors patent on the face of the record. After reviewing the record, we find one error patent requiring correction. The defendant was not informed of the two-year prescriptive period for filing an application for post-conviction relief as required

4

by La.Code Crim.P. art. 930.8. Accordingly, we direct the trial court to inform the defendant of this time period by sending appropriate written notice to the defendant within ten days of the rendition of this opinion. We further direct the trial court to file written proof that the defendant received the notice in the record of the proceedings.

*Sufficiency of the Evidence*

The defendant contends that the verdict of the jury was contrary to the law and evidence as there was insufficient evidence to support a conviction for second degree murder. The defendant argues that even with the admission of his statements, the essential elements of second degree murder were not proven beyond a reasonable doubt. He contends that the State did not prove that he had the specific intent to kill or inflict great bodily harm. Instead, he argues that the evidence when viewed in the light most favorable to the prosecution proves that he was guilty of manslaughter.

Second degree murder is defined at La.R.S. 14:30.1, which provides, in part:

> A. Second degree murder is the killing of a human being:

> (1) When the offender has a specific intent to kill or to inflict great bodily harm[.]

In pertinent part, La.R.S. 14:31(A)(1) defines manslaughter as:

> A. Manslaughter is:

> (1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed[.]

5

The Louisiana Supreme Court has held that "'sudden passion' and 'heat of blood' are . . . mitigatory factors in the nature of a defense which exhibit a degree of culpability less than that present when the homicide is committed in the absence of these factors." *State v. Snyder*, 98-1078, p. 4 (La. 4/14/99), 750 So.2d 832, 837-38, citing *State v. Lombard*, 486 So.2d 106 (La.1986). If a defendant establishes, by a preponderance of the evidence, the presence of these mitigating factors, he or she is entitled to a verdict of manslaughter. *Id.*

When a defendant raises the issue of sufficiency of evidence on appeal, a reviewing court, considering the evidence in the light most favorable to the prosecution, must determine whether any rational trier of fact could have found that the essential elements of the offense were proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). "The actual trier of fact's *rational* credibility calls, evidence weighing and inference drawing are preserved through the requirement that upon judicial review all of the evidence is to be considered as if by a rational fact finder in the light most favorable to the prosecution[.]" *State v. Mussall,* 523 So.2d 1305, 1311 (La.1988). *See also State v. Marcantel*, 00-1629 (La. 4/3/02), 815 So.2d 50.

A review of the evidence supports the jury's finding that the defendant was guilty of second degree murder. In addition to the eyewitness accounts, discussed above, a videotaped statement made by the defendant was entered into evidence. A review of the defendant's statement revealed that he and Ms. Gallow were experiencing marital difficulties. The defendant explained that an argument ensued in which there was some shoving, and the defendant stabbed Ms. Gallow. Instead of

taking her to the hospital, the defendant left Ms. Gallow in a car parked on a golf course.

Our review of the videotape does not indicate that the jury was required to find that the defendant acted in "sudden passion" or "heat of blood." In fact, no evidence presented to the jury was sufficient to compel them to accept the defendant's manslaughter defense. To the contrary, the evidence supports the jury's finding of intent. In sum, the evidence when viewed in the light most favorable to the prosecution is sufficient to convict the defendant of second degree murder.

Accordingly, this assignment lacks merit.

*Motion to Suppress*

The defendant asserts that the trial court erred in denying a motion to suppress a videotaped statement that he made to authorities after he invoked his right to counsel. He argues that because of his age and educational background, no questioning should have been conducted until the defendant had the opportunity to consult with an attorney. The defendant also contends that he did not effectively waive his right to counsel.

In accordance with La.R.S. 15:451, before the State introduces a statement purporting to be a confession, "it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises."

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966), the United States Supreme Court held that if the defendant makes a statement during custodial interrogation, the State must prove that the defendant was advised of his constitutional rights and that he voluntarily, knowingly, and intelligently waived

7

those rights. Here, the record indicates that defendant was arrested and read his rights. The defendant told officers that the knife was underneath his house. After showing officers the knife's location, the defendant said, "I want a judge. I want a lawyer." It is unequivocal that the defendant invoked his right to counsel. In the event that the right to counsel is invoked, "all questioning must cease and the accused is not subject to further interrogation until counsel has been made available to him, unless he initiates further communication, exchanges or conversation with the police and validly waives his earlier request for counsel." *State v. Koon*, 96-1208, p. 6 (La. 5/20/97), 704 So.2d 756, 762, citing *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880 (1981).

The record supports a finding that the defendant waived his request for counsel as testimony indicates that he reinitiated contact. Detective Greg Kellogg of the Calcasieu Parish Sheriff's Office testified that when the defendant asked how his wife was doing, he told the defendant that he "couldn't talk to him due to the fact that he requested a -- a lawyer." He informed the defendant that the lead investigator on the case was Andree Daugereaux. Detective Kellogg explained that the defendant then asked if he could talk to her.

Detective Daugereaux visited the defendant's holding cell after she learned that he wanted to speak with her. Major Mike Brynes accompanied her. Detective Daugereaux testified that she asked the defendant twice if he wanted to talk to her. He responded affirmatively both times. According to Detective Daugereaux, Major Byrnes told the defendant that if he wished to stop after his rights were read to him, he could do so and ask for an attorney. Detective Daugereaux testified that the defendant said that he understood.

8

Detective Daugereaux stated that she explained the form used to advise him of his rights and on which he could indicate the waiver of those rights. The defendant initialed beside each sentence setting forth his rights, indicating that he understood them. He also signed the waiver of rights form. According to Detective Daugereaux, the defendant gave an account of the day's events and never asked to stop the questioning. Detective Daugereaux confirmed that it appeared that the defendant wanted to assist in the investigation.

A review of the videotape supports Detective Daugereaux's testimony that the defendant waived his rights to an attorney. We, therefore, find that the trial court did not abuse its discretion in denying the defendant's motion to suppress.

Furthermore, insofar as the defendant reurges his assertion that the questioning sheriff's deputies were responsible for obtaining him counsel, we find no merit in this assertion. Louisiana Code of Criminal Procedure Article 230.1(A)(emphasis added) provides that "[t]he sheriff or law enforcement officer having custody of an arrested person shall bring him promptly, and in any case within seventy-two hours from the time of arrest, *before a judge for the purpose of appointment of counsel.*" *See also* La.Code Crim.P. art. 230.1(B)(emphasis added), which instructs that "if a defendant has the right to have the court appoint counsel to defend him, *the court shall assign counsel to the defendant.*" These provisions do not indicate that it is the investigating officers' responsibility to obtain counsel for the defendant. Further, we note that only three hours lapsed between the defendant's arrest and his statement.

For these reasons, this assignment lacks merit.

9

**DECREE**

For the foregoing reasons, the defendant's conviction is affirmed. The matter is remanded with instructions to the trial court to inform the defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion. The trial court is further instructed to file written proof in the record of the proceedings that the defendant received the notice.

**AFFIRMED; REMANDED WITH INSTRUCTIONS.**