Judgment rendered December 18, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,042-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                           Appellee

versus

TEDDRICK JAWAD JONES                         Appellant

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2021 CR 1009

Honorable Frederick D. Jones, Judge

* * * * *

LOUISIANA APPELLATE PROJECT               Counsel for Appellant
By: Chad M. Ikerd

TEDDRICK JAWAD JONES                      Pro Se

ROBERT STEPHEN TEW                        Counsel for Appellee
District Attorney

C. DOUGLAS WALKER
BARBARA ANNE HOLLADAY COLDIRON
Assistant District Attorneys

* * * * *

Before COX, THOMPSON, and MARCOTTE, JJ.

**THOMPSON, J.**

A dispute arose over a pack of cigarettes at a house party in Monroe, Louisiana and came to a tragic end when the unarmed man fleeing the confrontation was chased down and fatally shot in the back. The assailant hid away from police but was eventually located, arrested, tried, and convicted at a bench trial of second-degree murder and of being a felon in possession of a firearm. The assailant now appeals only the conviction for second-degree murder and the corresponding mandatory life sentence imposed, asserting he should only have been found guilty of manslaughter if anything at all. For the following reasons, we affirm his convictions and sentences.

### FACTS AND PROCEDURAL HISTORY

A dispute which arose during a house party on February 26, 2021, on South Eighth Street in Monroe, Louisiana resulted in the shooting death of Reginald Copning ("Copning"), and the ultimate arrest of Teddrick Jones ("Jones"), for second-degree murder and felon in possession of a weapon. Copning was found lying face down, and a gun light, which attaches to a pistol, was found on the ground under him. The gun light was taken into evidence by the Monroe Police Department. As a result of the investigation Jones was identified as a suspect and was subsequently located and arrested. Jones declined a plea offer of manslaughter, waived his right to a jury trial, and proceeded to a bench trial.

The bench trial began October 9, 2023, and included the testimony of numerous witnesses and those involved in the investigation. The first witness to testify was Jerry Bosley, who lives two houses down the street from the house where the party was taking place the night of the shooting

and owns the property where Copning's body was discovered. He testified that he heard a noise that night, went outside to look around, and saw Jones's body on the ground on his property.

Next, one of the Monroe Police Department officers on the scene that night, Charles Magee, testified. Officer Magee testified that he found a TLR-1 flashlight underneath the victim. The TLR-1 flashlight is a light that is made specifically for weapons and will fit any modern semi-automatic firearm. Officer Magee testified that the TLR-1 flashlight costs between $150 and $300, depending on the model, and it would not be reasonable to use one without a weapon. The lights are small, have a narrow light beam, and are expensive, and it is unlikely someone would carry one to use as a flashlight without also having a weapon. There was no weapon found at the scene. Officer Magee testified that he handled the gun light with gloves at all times when he discovered it.

Detective Chris Turner with the Monroe Police Department was accepted by the trial court as an expert in crime scene investigation, evidence handling, and securing evidence. He testified that he collected the gun light as evidence and swabbed it for DNA. He photographed Copning's clothes and testified that Copning was shot in the back at close range. Officer Turner also stated that the gun light was swabbed for DNA immediately on the scene.

Jerome White ("White") attended the party that night. He testified that he was friends with Copning for almost 15 years and also knew Jones for about the same amount of time. He testified there were about 35 or 40 people at the party the night of the shooting. White had been speaking to Jones earlier in the night and saw that he had a gun out on his lap. He left

2

the house and saw Jones and Copning arguing in the street. White testified that Copning took off running when Jones got his gun out and that Jones ran after Copning, that they disappeared from view, and then he heard a gunshot. White did not see either man again after the gunshot. White testified that Quantavious Thompson was also present at the party. On cross-examination, White testified that he agreed to speak with the police about the party after he was arrested on an unrelated incident. He stated that he had not been promised anything by the State in exchange for his testimony. He confirmed that following the shooting he rented a room at a local hotel in his name for Jones to hide away in and that Jones's mother paid for the room. Jones was eventually located by the police when he was arrested.

Quantavious Thompson ("Thompson") testified that he did attend the party that evening, that he was Copning's best friend, and he also knew Jones. He witnessed Copning and Jones get into an argument about Jones's cigarettes, which he accused Copning of stealing from him. Thompson looked down at his phone and then saw Copning running from Jones. He saw them run behind someone else's house and heard a gunshot. Thompson drove in his car to see if he could find Copning but could not see him. Thompson testified that he saw Jones with a gun on his hip when they first arrived at the party. Thompson admitted that he did not tell the police what he saw when they came to speak with him because he did not want the person who killed Copning to come looking for him or his family. Thompson identified Jones from a police lineup. He admitted that he gave differing stories to the police but claimed that his testimony in court was the truth.

3

Deputy Dee Hughes, with the Ouachita Parish Sheriff's Office, was qualified as an expert in fingerprint analysis and fingerprinted Jones in the courtroom to definitively state that he is the defendant. Next, Monroe Police Department Detective Johnanthan Davis testified that he interviewed witnesses at the scene the night of the shooting, but nobody would admit to seeing anything. He could not identify any witnesses other than Thompson and White. He testified that the police department was alerted to the shooting that night by ShotSpotter, which is a system that registers gunshots and notes the location of the shots, and he notified the police department of the shooting in this case. Det. Hughes testified that Thompson's story stayed consistent other than finally identifying the shooter in his last interview with police. He testified that the DNA samples from the gun light could not rule out Jones and two other unidentified people. He never tested Thompson or White against the unknown samples.

Monroe Police Department Detective Andrew Stadius testified that he interviewed Thompson and White. Katie Traweek is a forensic DNA analyst at North Louisiana Crime Lab in Shreveport, Louisiana and was qualified by the trial court as an expert in forensic DNA analysis. She described the process of analyzing a DNA sample. She testified that the DNA taken from the gun light was contact DNA, meaning it normally comes from someone holding or touching an item. She admitted that secondary transfer is possible, meaning if one person touched another person's hand and then that person touched the gun light, it is possible both sets of DNA would be present. Traweek testified that Jones's DNA was found on the gun light. Dr. Frank Peretti, a forensic pathologist, testified that Copning died of a single gunshot wound in the mid-back.

4

Finally, Tenishia Jones, Jones's aunt, testified that she was also present at the house party. She testified that White left the party with another man before the altercation happened. She asserted that Jones had stopped smoking cigarettes and did not carry a gun. She testified that Jones, Thompson, and Copning were playing and running in the street but were not arguing. She admitted to not having come forward with information when the police were first looking for witnesses.

After the conclusion of the trial on October 12, 2023, the trial court found Jones guilty of second-degree murder and possession of a firearm by a convicted felon. Jones filed a motion for new trial, which was denied by the trial court. On February 12, 2024, the trial court, after noting that it considered the presentence investigative report (PSI), sentenced Jones: (1) for the crime of possession of a firearm by a convicted felon to ten years at hard labor without benefit of probation, parole, or suspension of sentence and a fine of $1,000 plus costs; and (2) for the crime of second degree murder to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence, with the two sentences to run concurrently. Jones now appeals only his conviction for second-degree murder.

## ASSIGNMENTS OF ERROR

**First Assignment of Error: The State failed to prove that Teddrick Jones was guilty of second-degree murder. The State did not prove the identification of the shooter and only offered circumstantial evidence.**

**Second Assignment of Error: Alternatively, if the evidence was sufficient to prove Teddrick Jones was the shooter, he should have been found guilty of the lesser included offense of manslaughter.**

**DISCUSSION**

In his first assignment of error, Jones asserts that the evidence introduced at trial was insufficient to prove beyond a reasonable doubt that he was guilty of second-degree murder.

The standard of review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Grimble*, 51,446 (La. App. 2 Cir. 7/5/17), 224 So. 3d 498. This standard, now legislatively embodied in La. C.Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. Dotie*, 43,819 (La. App. 2 Cir. 1/14/09), 1 So. 3d 833, *writ denied*, 09-0310 (La. 11/6/09), 21 So. 3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Eason*, 43,788 (La. App. 2 Cir. 2/25/09), 3 So. 3d 685, *writ denied*, 09-0725 (La. 12/11/09), 23 So. 3d 913.

The *Jackson* standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct

evidence and inferred from the circumstantial evidence must be sufficient for a rational trier of fact to conclude, beyond a reasonable doubt, that the defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983); *State v. Hampton*, 52,403 (La. App. 2 Cir. 11/14/18), 261 So. 3d 993, *writ denied*, 19-0287 (La. 4/29/19), 268 So. 3d 1029. Circumstantial evidence is defined as evidence of facts or circumstances from which one might infer or conclude the existence of other connected facts. *Hampton*, *supra*. Direct evidence provides proof of the existence of a fact, for example, a witness's testimony that he saw or heard something. Circumstantial evidence provides proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. *State v. Lilly*, 468 So. 2d 1154 (La. 1985); *Hampton*, *supra*.

When the conviction is based on circumstantial evidence, such evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. As an evidentiary rule, it restrains the fact finder, as well as the reviewer on appeal, to accept as proven all that the evidence tends to prove and then to convict only if every reasonable hypothesis of innocence is excluded. Whether circumstantial evidence excludes every reasonable hypothesis of innocence presents a question of law. *State v. Shapiro*, 431 So. 2d 372 (La. 1982); *State v. Hampton*, *supra*.

Second-degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S.

7

14:10(1). Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. *State v. Walker*, 53,975 (La. App. 2 Cir. 6/30/21), 321 So. 3d 1154, *writ denied*, 21-01334 (La. 11/23/21), 328 So. 3d 83.

Viewing the evidence in the light most favorable to the prosecution, the State presented ample evidence for a reasonable trier of fact to convict Jones of second-degree murder. The State presented evidence from eyewitnesses that Jones and Copning were both at the party at the same time and got into an argument about cigarettes. More than one witness saw Copning running and being chased by Jones, who was seen carrying a gun on his hip the night of the party. There was a short time period between when Jones began chasing Copning toward the neighbor's property that a gunshot was heard in that location, which was also registered on ShotSpotter, and Copning was found lying in the neighbor's yard. The gun light found underneath Copning's body had Jones's DNA on it. Jones fled the area and hid in a hotel room until he was later apprehended by police.

Jones's defense challenged the credibility of Thompson and White and argued that Jones's aunt was a more believable witness. However, as noted above, this Court does not assess the credibility of witnesses or reweigh evidence. Based on the record before us, the State provided ample evidence that excluded every reasonable hypothesis of innocence pursuant to La. R.S. 15:438. This assignment of error is without merit.

In his second assignment of error, Jones argues in the alternative that he should have been convicted of manslaughter, rather than second-degree murder. The offense of manslaughter is defined as a homicide that would be second-degree murder, but the offense is committed in sudden passion or

8

heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. La. R.S. 14:31(A)(1); *State v. Thornton*, 47,598 (La. App. 2 Cir. 3/13/13), 111 So. 3d 1130. Sudden passion and heat of blood are mitigatory factors in the nature of a defense which exhibits a degree of culpability less than present when the homicide is committed without them. *State v. Lombard*, 486 So. 2d 106 (La. 1986); *State v. Thornton*, *supra*. The defendant bears the burden to prove, by a preponderance of the evidence, that he acted in sudden passion or heat of blood in order for manslaughter to be appropriate. *State v. Thornton*, *supra*.

Provocation and the time for cooling are questions for the trier of fact to determine according to the standard of the average or ordinary person. *Id.* The appellate court must determine whether a rational trier of fact, upon reviewing the evidence in the light most favorable to the prosecution, could have found that these mitigating factors had not been established by a preponderance of the evidence. *Id.*

On review of the evidence in the light most favorable to the prosecution, Jones failed to prove, by a preponderance of the evidence, that circumstances existed such that he was so provoked by sudden passion or heat of blood that he was deprived of an average person's self-control and cool reflection. The only possible explanation given for the argument between Jones and Copning was that Copning may have stolen a pack of cigarettes from Jones. The average person would certainly not have escalated the argument such that it resulted in chasing Copning from the party to a neighbor's yard and then shooting Copning, who was unarmed and fleeing, at close range in the back. The evidence was sufficient to support a

9

conviction for second-degree murder. Jones failed to prove that he acted in a sudden passion or heat of blood sufficient to reduce his culpability and render the homicide a manslaughter. This second assignment of error is likewise without merit. As a result, the trial court's verdict was correct, and the conviction is affirmed.

## ERROR PATENT

Our review of the record reveals that the trial court did not comply with the obligatory delay before sentencing Jones. La. C. Cr. P. art. 873 requires that "[i]f a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled." Jones was sentenced on the same date that his motion for a new trial was denied. Nevertheless, we conclude that any error was harmless in this instance because Jones did not object to the trial court's failure to observe the sentencing delay and because he suffered no prejudice as he faced a mandatory sentence of life imprisonment. *State v. Moossy*, 40,566 (La. App. 2 Cir. 3/10/06), 924 So. 2d 485.

Additionally, the trial court failed to advise Jones of his rights under La. C. Cr. P. art. 930.8. Jones is hereby advised that no application for postconviction relief shall be considered if filed more than two years after the judgment of conviction and sentence has become final. *State v. Nelson*, 46,915 (La. App. 2 Cir. 2/29/12), 86 So. 3d 747.

10

## CONCLUSION

For the foregoing reasons, Teddrick Jones' convictions and sentences are affirmed.

**AFFIRMED.**