Judgment rendered December 18, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,025-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                    Appellee

versus

MURL RAY RODGERS                    Appellant

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2020 CR 5002

Honorable Larry D. Jefferson, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Douglas Lee Harville

MURL RAY RODGERS                    Pro Se

ROBERT STEPHEN TEW                    Counsel for Appellee
District Attorney

R. NICHOLAS ANDERSON
RICKY SMITH
Assistant District Attorneys

* * * * *

Before STONE, THOMPSON, and ELLENDER, JJ.

**ELLENDER, J.**

Charged with second degree murder, Murl Rodgers ("Rodgers") was found guilty of manslaughter at a bench trial, and was subsequently sentenced to 40 years at hard labor.  Following a motion for reconsideration, Rodgers was resentenced to 35 years at hard labor.  On appeal, the Court is asked to consider the following issues: the admissibility of a witness' prior inconsistent statement, a claim of insufficient evidence, the admissibility of the victim's dying declaration, and an alleged failure to properly transcribe the prior recorded statement.  Finding no reversible error, we affirm Rodgers' conviction and sentence.

## FACTS

The bench trial, with the Honorable Larry D. Jefferson presiding, developed the following facts.  On October 5, 2020, Cpl. Stephen Snowberger ("Cpl. Snowberger") of the Monroe Police Department ("MPD") was dispatched to a shooting at 3017 Lee Street in Monroe.  He testified that upon arrival, he found Tony Hicks ("Hicks") deceased and lying near the roadway.  Cpl. Snowberger conducted an investigation, interviewed several witnesses, and ultimately arrested Rodgers for the second degree murder of Hicks.  In an interview following his arrest, Rodgers told Cpl. Snowberger that prior to the shooting, he told Hicks to "keep his [Rodgers'] name out of his mouth."  Cpl. Snowberger also testified, over objection, that Rodgers admitted to being present when Hicks was shot but denied being the shooter.

Joseph Hill ("Hill") also testified, stating on the date of the shooting, he and his cousin, Stanley Hubbard, came to 3017 Lee Street to purchase a

motor from Rodgers.[1]  Hill indicated he was under the hood of a car, disconnecting a motor, when he heard Rodgers ask Hicks why he "put his name in something."  Hill looked up to see Rodgers and Hicks coming from a trail behind the house, and he said Hicks had a bloody wound on the left side of his chest.  Rodgers got into his car and left.  Hill said Hicks told him Rodgers shot him before he died, but Hill did not see anyone at the scene with a gun.

Anthony Walker ("CSI Walker"), a crime scene investigator for MPD, testified he collected evidence at the scene of the shooting, which included clothing and shoes belonging to Hicks, a bullet retrieved from a window frame at 3017 Lee Street, a bullet casing found under that same window, and a bullet retrieved during Hicks' autopsy.  Walker also recovered an unrelated, inoperable firearm from a silver Nissan parked in front of the scene, as well as a spent .380 casing found on the ground in front of the car.  Additionally, Walker described a blood trail running from the southwest corner of 3017 Lee Street to the window at the northeast corner of the house where the bullet was found.  This was corroborated by MPD Detective Chris Turner ("Det. Turner"), who also responded to the shooting, assisted with Rodgers' arrest, and collected Rodgers' clothing and cell phone.

Willie Fowler ("Fowler"), who was determined to be a cousin to Rodgers, was called to testify, but claimed he did not remember going to Rodgers' home on the date of the shooting.  When asked if he remembered giving a recorded statement to Cpl. Snowberger immediately following the

---

[1] Stanley Hubbard was subpoenaed to testify for the State, but he refused to attend Rodgers' trial.

shooting, Fowler said he did not. Fowler also stated he did not remember what he said during his previous interview with Cpl. Snowberger. Fowler was adamant he did not wish to testify. The State made several attempts to refresh Fowler's memory by playing portions of his recorded interview with Cpl. Snowberger, but Fowler maintained he did not remember anything about the shooting of Hicks or his interview with police following the shooting, and he attributed this memory loss to a traumatic brain injury and mixing medications with alcohol.

During Fowler's testimony, counsel for Rodgers repeatedly objected to his recorded statement being considered for the truth of the matter asserted, arguing the prior statement was hearsay. The State maintained Fowler's statement was being used at that time only to refresh his memory and not as probative evidence of Rodgers' guilt. Despite counsel's apparent concern over the trial court's potential consideration of Fowler's recorded statement, when given the opportunity to cross-examine Fowler as to his interview with Cpl. Snowberger and his testimony at trial, counsel for Rodgers stated he had no questions for Fowler.

Unsurprisingly, on the second day of trial, the State recalled Cpl. Snowberger to authenticate Fowler's recorded interview, and the statement was played in open court. The interview began with Fowler stating he went to his grandmother's house at 3017 Lee Street on the day of Hicks' shooting with his uncle and cousin (Rodgers) with plans to get windshield wipers from a car at his grandmother's home to put on another vehicle. Fowler stated Hicks pulled up while he was working on the windshield wipers and got out of his vehicle. Fowler stated he heard other people in the yard begin telling Rodgers, "Don't do it, don't do it." Fowler said Rodgers had a gun in

3

his hand and shot at Hicks a couple of times. Fowler stated he assumed Rodgers missed because Hicks didn't fall down after the shots were fired. Rodgers then told Hicks to keep his name out of his mouth and shot at Hicks again. Fowler believed the second round of shots hit Hicks, and he said Rodgers then left the scene almost immediately.

When the recorded statement concluded, the State asked the trial court to accept Fowler's prior inconsistent statement as probative evidence of Rodgers' guilt pursuant to La. C.E. art. 801(D)(1)(a). Defense counsel objected and argued he was not given a meaningful opportunity to cross-examine Fowler on the contents of his prior recorded statement, and he could not have a meaningful opportunity to cross-examine him, because Fowler's memory could not be refreshed. The trial court found Rodgers' right to cross-examine Fowler was protected by defense counsel's opportunity to do so the day before, although counsel did not do so when given the opportunity. The trial court then admitted Fowler's prior inconsistent statement into evidence under La. C.E. art. 801(D)(1)(a).

The State's final witness, Dr. Frank Peretti ("Dr. Peretti"), authenticated his autopsy report detailing the cause of Hicks' death, which he determined to be two fatal gunshot wounds—one to Hicks' chest and one to his left shoulder. Dr. Peretti stated the wounds were fatal when combined but either wound would have resulted in Hicks' death on its own.

Based on the evidence described above, the trial court found Rodgers guilty of the lesser included offense of manslaughter and ultimately sentenced him to 35 years at hard labor. This appeal followed.

4

## DISCUSSION

This appeal contains both a brief filed on Rodgers' behalf by the Louisiana Appellate Project, as well as a pro se brief filed by Rodgers himself. The brief filed by counsel contends the trial court erred in admitting the prior recorded statement of Fowler as substantive evidence under La. C.E. art. 801(D)(1)(a), and it argues that without Fowler's statement, insufficient evidence exists to support Rodgers' manslaughter conviction. Rodgers' pro se brief echoes the insufficient evidence claim made by appellate counsel, but also contends Hicks' dying declaration was erroneously admitted into evidence, and further argues the trial court's "failure" to provide a transcript of the recorded statement played at trial and entered into evidence constitutes a material omission from the record, thereby depriving him of his right to judicial review on appeal.

*Assignments of Error by Counsel: Admissibility of Statements and Sufficiency of the Evidence*

As stated, appellate counsel contends Fowler's prior recorded statement was improperly admitted under La. C.E. art. 801(D)(1)(a), and further, because the State failed to indicate its intention to later offer the recorded statement as a prior inconsistent statement, with no meaningful opportunity given to cross-examine Fowler as to that statement, this deprived Rodgers of his rights under the confrontation clause. Counsel also contends Fowler's recorded statement was inadmissible under La. C.E. art. 803(5). Counsel concludes by arguing that without Fowler's improperly admitted statement, the evidence presented by the State is insufficient to support a manslaughter conviction. Rodgers' pro se brief argues the witness testimony provided an insufficient basis for his conviction.

The State responds that any claims Fowler's statement was improperly admitted into evidence lack merit. The confrontation clause requires only a defendant be given an opportunity for cross-examination of any witnesses, and the State maintains counsel had an opportunity to cross-examine Fowler, but chose not to avail himself of it. The State argues even if the recorded statement given by Fowler was admitted erroneously, any such error was harmless because sufficient evidence existed outside of Fowler's statement to prove Rodgers committed manslaughter beyond a reasonable doubt. Specifically, the State points to Hicks' dying declaration implicating Rodgers as his shooter, made to Hill just prior to his death.

Although it is not designated as an assignment of error, sufficiency of the evidence forms an integral part of Rodgers' argument. When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. *State v. Hearold*, 603 So. 2d 731 (La. 1992). If the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal and the reviewing court must then consider the assignments of trial error. *Id*. The relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *State v. Ramsey*, 55,491 (La. App. 2 Cir. 2/28/24), 381 So. 3d 308, *writ denied*, 24-00379 (La. 10/1/24), 393 So. 3d 865.

Manslaughter is defined, as applies to this case, as a homicide which would be murder under either R.S. 14:30 (first degree murder) or R.S.

6

14:30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. La. R.S. 14:31 (A)(1). Sudden passion and heat of blood are not elements of the offense of manslaughter; rather, they are mitigating factors in the nature of a defense which exhibit a degree of culpability less than that present when the homicide is committed without them. *State v. Lombard*, 486 So. 2d 106 (La. 1986); *State v. Smith*, 52,638 (La. App. 2 Cir. 5/22/19), 272 So. 3d 990, *writ denied*, 19-01001 (La. 10/1/19), 280 So. 3d 157. In a case where the defendant claims he was not the person who committed the offense, the Jackson standard requires the state to negate any reasonable probability of misidentification. *State v. Young*, 20-01041 (La. 5/3/21), 320 So. 3d 356; *State v. Watkins*, 55,702 (La. App. 2 Cir. 7/17/24), __ So. 3d __.

On close review, we find the evidence was sufficient to support the conviction. Hill's testimony established that Rodgers had a verbal altercation with the victim and that a shooting occurred. Hill also testified that the victim, in a dying declaration, told him (Hill) that it was Rodgers who shot him (Hicks). Fowler's prior statement clearly identified Rodgers as the shooter. Officers found a blood trail leading up the path where both men had been standing, and no witness saw anyone else at the scene other than Rodgers and the victim. Rodgers told Cpl. Snowberger that he was there when the shooting occurred. Dr. Peretti testified that either of the gunshot wounds Hicks sustained would have been fatal. This showing easily satisfies the elements of the provocation, the shooting, and the exclusion of any other person than Rodgers as the killer.

7

We now turn to Rodgers' specific arguments. He first contends the trial court erred in admitting Fowler's prior recorded statement as substantive evidence of guilt. La. C.E. art. 801 (D)(1)(a), defining those statements that are not hearsay, provides:

> (1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
>
> > (a) In a criminal case, inconsistent with his testimony, provided that the proponent has first fairly directed the witness' attention to the statement and the witness has been given the opportunity to admit the fact and where there exists any additional evidence to corroborate the matter asserted by the prior inconsistent statement.

We find Fowler's prior statement to Cpl. Snowberger falls under this exception to the hearsay rule. Fowler's prior statement was inconsistent with his trial testimony, he was given an opportunity to review his prior statement and admit the facts contained therein, and the testimony previously given at trial by Hill, CSI Walker, and Detective Turner corroborated Fowler's prior inconsistent statement. Fowler's prior statement to Cpl. Snowberger was appropriately admitted into evidence as a nonhearsay statement under La. C.E. art. 801(D)(1)(a). As Fowler's statement has been deemed admissible, there is no need, despite counsel's assertions, to consider whether the same statement meets the criteria set out in La. C.E. art. 803(5), especially where, as in this case, the record is devoid of any indication the State attempted to enter Fowler's statement under that article.

The second argument is that the admission of Fowler's statement, after the conclusion of his testimony, constituted a violation of Rodgers' right of confrontation. An accused in a criminal prosecution has a

constitutional right to be confronted with the witnesses against him. The primary purpose behind this right appears to be securing for the defendant the opportunity for cross-examination in cases involving noncooperative nonparty witnesses. *State v. Rankin*, 42,412 (La. App. 2 Cir. 9/19/07), 965 So. 2d 946, *writ denied*, 07-2067 (La. 3/7/08), 977 So. 2d 897. However, the confrontation clause guarantees only an *opportunity* for effective cross-examination, not a cross-examination that is effective in whatever way, and to whatever extent, the defendant might wish. *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); *State v. Shannon*, 55,697 (La. App. 2 Cir. 7/17/24), 2024 WL 3434618, *writ denied*, 24-00987 (La. 11/20/24), 2024 WL 4830811.

Fowler's statement was introduced on the first day of trial under La. C.E. 612, for the purpose of allowing Fowler to refresh his memory. As provided by the article, when a witness during testimony uses a writing, recording, or object to refresh his memory, an adverse party is entitled to inspect it, to examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. While the State was largely unsuccessful in refreshing Fowler's memory, defense counsel was given the opportunity to question Fowler about his recorded statement but chose not to. Appellate counsel asserts Rodgers' confrontation rights cannot be protected when the State introduces a prior inconsistent statement for its probative value following the conclusion of the declarant's testimony, but *Rankin*, *supra*, clearly allows the admission of a witness' prior inconsistent statement when there has been a prior opportunity to cross-examine the witness and when the statement is being offered as substantive evidence of a defendant's guilt.

9

Further, the State's decision to recall Cpl. Snowberger on the second day of trial, in an effort to authenticate Fowler's statement and have it admitted under La. C.E. art. 801(D)(1)(a), was more than a foreseeable possibility; it was predictable and probable. Any competent prosecutor would seek to have a prior inconsistent statement admitted as nonhearsay evidence under the circumstances presented here. We find the trial court correctly determined the rights afforded to Rodgers under the confrontation clause were protected as trial counsel was given an opportunity to cross-examine Fowler prior to the State's introduction of his inconsistent statement as probative evidence. Additionally, Rodgers was not prohibited from calling Fowler as a witness himself, but chose not to do so.

In short, we find no use of hearsay against Rodgers, no denial of confrontation, and no denial of cross-examination. Further, the evidence is sufficient to support the conviction for manslaughter. This assignment of error is without merit.

*Rodgers' Pro Se Assignments of Error*

Rodgers makes three arguments in his untimely, *pro se* brief. First, he argues the evidence introduced at trial was insufficient to establish his guilt beyond a reasonable doubt because the State produced only two witnesses who were present when Hicks was killed, and neither provided any testimony sufficient to establish his guilt beyond a reasonable doubt. Next, Rodgers argues Hicks' dying declaration was hearsay, and therefore inadmissible, because the State offered no proof Hicks identified Rodgers as his shooter beyond Hill's testimony. Finally, Rodgers contends because Fowler's recorded statement was published to the court but not transcribed,

10

he was denied his right to full judicial review based on a transcript of the trial proceedings and a complete record of all evidence.

As we have already determined there was sufficient evidence to support Rodgers' conviction, we turn to Rodgers' second assignment of error wherein he contends the trial court erred in admitting the victim's dying declaration identifying Rodgers as the person who shot him. La. C.E. art. 804(B)(2) provides that a statement made by a declarant while believing that his death was imminent, concerning the cause or circumstances of what he believed to be his impending death, is not excluded by the hearsay rule. For a declarant's statement to be introduced into evidence under the "dying declaration" exception to the hearsay rule, the court must be satisfied the declarant believed his death was imminent/impending, and the declarant's statement concerned the cause or circumstances of the impending death. *State v. Anderson*, 55,550 (La. App. 2 Cir. 4/10/24), 383 So. 3d 1081, *writ denied*, 24-00779 (La. 10/23/24), 2024 WL 4551497. Based on the facts contained in this record, it is obvious Hicks' dying declaration was made under the belief his death was imminent. Further, as no contemporaneous objection was made to Hill's testimony concerning the victim's dying declaration under La. C. Cr. P. art. 841(A), this issue was not properly preserved for consideration on appeal. For these reasons, this assignment lacks merit.

As for Rodgers' claim that Fowler's statement should have been transcribed, the record of Rodgers' trial contains a digital recording of this statement to Cpl. Snowberger. While Rodgers contends the trial court somehow prejudiced him by failing to have Fowler's prior statement transcribed, there is no support for his argument in the law. The record in

11

this matter was prepared in accordance with U.R.C.A. Rule 2-1.9, which requires the clerk of court to include in the appellate record the verbatim transcript of oral testimony of the witnesses in the order in which it is taken. Fowler's prior inconsistent statement is not oral testimony taken at trial. Rather, it was offered and admitted into evidence as State's Exhibit 9 in its digital format. As such, the trial court was required to provide the same to this Court, and it did so. This assignment of error lacks merit.

## CONCLUSION

For the reasons expressed, we affirm Murl Rodgers' manslaughter conviction and sentence.

**AFFIRMED.**