Judgment rendered December 17, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,616-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

BENJAMIN DEVONTE                            Appellant
FRANKLIN

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 383,356

Honorable Donald E. Hathaway, Jr., Judge

* * * * *

LOUISIANA APPEALS &                 Counsel for Appellant
WRIT SERVICE
By: Christopher A. Aberle

BENJAMIN DEVONTE                    Pro Se
FRANKLIN

JAMES E. STEWART, SR.               Counsel for Appellee
District Attorney

JASON W. WALTMAN
ERIC M. WHITEHEAD
Assistant District Attorneys

* * * * *

Before COX, THOMPSON, and HUNTER, JJ.

**COX, J.**

This case is appealed from the First Judicial District Court, Caddo Parish, Louisiana. Benjamin Devonte Franklin was convicted of second degree murder and sentenced to life imprisonment. He now appeals the sufficiency of the evidence against him. For the following reasons, we affirm Franklin's conviction and sentence.

## FACTS

Franklin was indicted on September 30, 2021, with one count of second degree murder of Shameika Robison. The trial court ordered a sanity commission, and the sanity hearing was held on September 27, 2023. The trial court stated that it reviewed the doctors' reports and found Franklin competent to assist in his defense, assist counsel, and understand the charges against him.

Franklin filed a motion to change his plea to not guilty and not guilty by reason of insanity. After a hearing on the matter, the State and trial court accepted Franklin's change in plea. The following testimonies were presented at trial:

Karanski Kennedy testified that he was at the South Port Apartments the night of the shooting with his cousins and brother. He stated that the police asked them if they knew anything about what happened, and he did not. He testified that he only heard the gunshots but did not go outside.

Kierra Mills testified that Robison was her aunt, but she felt more like a big sister, and they talked almost every day. Mills stated that when her family did not hear from Robison for more than a day, she went to Robison's apartment to check on her. She testified that it was unusual for Robison to not contact family for that long or respond to phone calls. Mills testified that

when she arrived at the apartment complex, she saw Robison's vehicle in the parking lot, and when she went to Robison's apartment door, the door was cracked open; at this point, Mills called her father and the police. Both of Mills's 911 calls were played for the jury. Mills stated that she did not enter Robison's apartment, but she saw the police go inside. Mills testified that Robison's daughter was four or five years old at the time of the shooting, and she is currently eight years old.

Shreveport Police Detective Monica Davis testified that she was on patrol on June 4, 2021, when she was dispatched for a welfare concern at the South Port Apartments. Det. Davis's MVS video was played for the jury. Det. Davis stated that after her partner arrived, the two of them announced themselves and entered the apartment. She testified that she found Robison's body half-naked and noticed multiple gunshot wounds. Det. Davis stated that she did not observe Robison breathing, called the fire department, and proceeded to search the apartment. She stated that there were moving boxes in the apartment, but the whole apartment was neat except for the master bedroom, where things were in disarray.

Shreveport Police Crime Scene Investigator Amber Futch testified that she was dispatched on June 4, 2021, to assist homicide/violent crime detectives with a crime scene. Corporal Futch's crime scene photographs were entered into evidence. She testified that she observed several 9 mm cartridge casings on the floor near Robison. She stated that she did not observe any damage to the door or latch, indicating that there was no forced entry. Cpl. Futch testified that they recovered a phone box and case but no phone in the apartment. She also found two open condom wrappers in the

2

trash can. She testified that she found a total of 21 expended cartridge casings and 10 projectiles.

Cpl. Futch testified that when she finished processing the crime scene at South Port Apartments, she was dispatched to a location on Blom Street, where officers were executing a search warrant. Cpl. Futch's photos of the Blom residence were entered into evidence. She stated that she found a Taurus .40 caliber, Glock 9 mm, and two extended magazines that fit the Glock 9 mm. She testified that she was instructed to collect a black sweatshirt, black jeans, camouflage face mask, shoes, and cell phone found by detectives. Cpl. Futch stated that she photographed two bank cards belonging to Robinson in the bathroom that were snapped or cut in half; one card was also partially burned. In another bedroom, she found a 9 mm Taurus, and in the garage, she found Franklin's identification in a white Toyota Corolla.

Olivia Jones, a sexual assault nurse examiner, testified that she was called in by the coroner to examine Robison because of the way she was found. She stated that she swabbed Robison's body to test for possible DNA that did not belong to Robison. After taking photographs of Robison and writing her report, she sent the swabs and samples to the coroner's office.

Dr. Ashley Brummett testified that she is a forensic DNA analyst at the North Louisiana Crime Lab, and she was accepted as an expert in the field of forensic DNA analysis. Dr. Brummett stated that she performed DNA analysis on the evidence collected in this case. She testified that Franklin was excluded as a contributor to the DNA on the condom wrappers, and there was not enough DNA (other than Robison's DNA) on the cervical swab to determine who contributed. Dr. Brummett was able to determine

that male DNA was present on the external genitalia swab, perineal swab, vaginal swab, cervical swab, vaginal washing, and anal swab.

Sheronda Robison testified that Robison was her sister. She stated that in June 2021, she and her extended family took a trip, but Robison did not go with them. Sheronda testified that Robison lived with her prior to moving into the South Port Apartment, about a month prior to her murder. She stated that although they did not live together, they still talked to each other every day. Sheronda stated she was concerned when she did not speak with Robison while she (Sheronda) was gone on the family trip because Robison's daughter was on the trip as well. She testified that when Robison did not return her phone calls and texts, she asked her daughter, Mills, to go to Robison's apartment to check on her.

Dr. James Traylor was accepted as an expert in forensic pathology. He testified that he performed the autopsy on Robison and determined that her cause of death was multiple gunshot wounds. He stated that Robison sustained approximately 20 gunshot wounds, but there may be more because the wounds were bunched closely together. Dr. Traylor testified that Robison had massive internal damage and bleeding from the gunshots, and she was deceased 24 to 36 hours before she was found.

Michael Stelly was accepted as an expert in the field of forensic firearm identification and examination. Mr. Stelly testified that he performed a firearm analysis in this case, which was submitted as evidence. He stated that he tested a Glock 9 mm model 19 gen 5 associated with this case, and it matched the 21 fired 9 mm cartridge cases found at the scene. He stated that 14 of the 15 bullets submitted from the crime scene and

4

autopsy were also fired from the same Glock 9 mm, but he was unable to perform an individual analysis of one bullet.

Shreveport Police Detective Donald Belanger testified that he investigated a robbery at a Circle K in Shreveport in May of 2021. Surveillance video from that robbery was played for the jury. Det. Belanger stated that still images from the video were published for the public to submit tips regarding who robbed the Circle K. After receiving several tips, the Circle K clerk was presented with a photo lineup, and Franklin was arrested for the robbery.

Allison Clark testified that she was Robison's friend for over ten years. Clark stated that Robison met Franklin while working at Dominos in the Spring of 2021. She testified that Robison and Franklin were not dating but talked almost every day; Robison ended the relationship with Franklin around April, about a month before sending Clark a screenshot of a Crime Stoppers' post and identifying Franklin as the robber.

Shreveport Police Detective Jeremy Blanchard testified that he was dispatched to the South Port Apartments in June 2021, and upon arrival, he found a deceased black female. He stated that his investigation led him to get a search warrant for a home on Blom Street, where Franklin lived with his mother. Det. Blanchard's testimony corroborated Cpl. Futch's testimony regarding the evidence collected. Det. Blanchard obtained a search warrant for the accounts associated with Robison's bank cards found in Franklin's bathroom and found that the credit cards were swiped but declined in the early morning hours after the shooting. He stated that one card was used at an ATM, and he was able to obtain surveillance video from the ATM; that video was played for the jury. Det. Blanchard testified that the camouflage

mask recovered from Franklin's home matched the mask in the ATM video. The vehicle in the ATM video was the same make and model as the Circle K shooting, a white Toyota Corolla.

Det. Blanchard also identified Robison's iPhone recovered from a Wal-Mart kiosk where cell phones can be pawned; the kiosk takes a photo and fingerprints of the person who pawns the phone. He testified that the mask of the person in the cell phone kiosk photo is substantially similar to the camouflage mask he identified earlier, and the ID submitted to the kiosk was that of Franklin. Det. Blanchard determined that Franklin pawned the phone on June 4, 2021, at 7:17 a.m., almost 24 hours after Franklin attempted to use the ATM. Surveillance video from Wal-Mart shows Franklin arrive in a white Toyota Corolla and walk toward the cell phone kiosk. Det. Blanchard explained that there is a law enforcement database that connects all pawn activity for a specific person; officers ran Franklin's name through the system; they discovered that he pawned a TV about an hour after pawning the cell phone in the kiosk. Det. Blanchard testified that he obtained an arrest warrant for Franklin for the second degree murder of Robison. He identified Franklin in open court.

On cross-examination, Det. Blanchard stated that he reviewed text messages on Robison's phone, and there appeared to be a romantic relationship between Robison and Franklin. He stated that there was nothing in the text messages that implicated Franklin in the Circle K robbery. Det. Blanchard stated that when he interviewed Franklin, Franklin admitted to shooting Robison.

Investigator Larry Cunningham with the District Attorney's Office testified that he retired from the Shreveport Police Department. Investigator

Cunningham identified calls and texts made by Franklin while incarcerated, which were submitted as evidence. In one text message, Franklin stated, "I've been a fool once before. I won't be one again. This s*** can cost me my life. I'm not mentally stable, but I'm not insane either, a little crazy, but hey."

Dr. Todd Lobrano was accepted as an expert in psychology. He testified that he evaluated Franklin in his sanity commission, and although Franklin had a previous diagnosis of Bipolar II disorder, he did not behave in a way that was indicative of that diagnosis and was not being treated. He described Bipolar II as a mood disorder, which does not affect someone's ability to know right from wrong. It was Dr. Lobrano's opinion that Franklin knew right from wrong when he killed Robison.

The defense did not call any witnesses but submitted Franklin's confession into evidence. The State and defense agreed to play the entire video for the jury. At the beginning of his interview, he stated that he and Robison had an "on and off" relationship, he knew she had other relationships, and they "weren't really serious." Franklin later confessed and stated, "I lost it… She was playing me." Franklin admitted to shooting her "too many times."

The jury returned a unanimous verdict of guilty as charged of second degree murder. The trial court denied Franklin's motion for new trial, Franklin waived the 24-hour sentencing delay, and the trial court sentenced him to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. Franklin appeals his conviction.

## DISCUSSION

Franklin asserts that the evidence was insufficient to prove he was guilty of second degree murder. He admits to killing Robison but argues it was committed in the heat of blood or sudden passion. He points out that he told the police and Dr. Lobrano that he lost his cool because Robison was dating someone else. He argues that because the homicide was committed in sudden passion or heat of blood, it should be reduced to manslaughter. He asks that his second degree murder conviction be set aside and a verdict of manslaughter be entered.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate,* 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied,* 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Carter,* 42,894 (La. App. 2 Cir. 1/9/08), 974 So. 2d 181, *writ denied,* 08-0499 (La. 11/14/08), 996 So. 2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford,* 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Dotie,* 43,819 (La. App. 2 Cir. 1/14/09), 1 So. 3d 833, *writ denied,* 09-0310 (La. 11/6/09), 21 So. 3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. *State v. Smith,* 94-3116 (La. 10/16/95), 661 So. 2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Eason,* 43,788

(La. App. 2 Cir. 2/25/09), 3 So. 3d 685, *writ denied,* 07-0725 (La. 12/11/09), 23 So. 3d 913.

Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. *State v. Bishop*, 01-2548 (La. 1/14/03), 835 So. 2d 434; *State v. Gilbert*, 55,257 (La. App. 2 Cir. 9/27/23), 372 So. 3d 403, *writ denied*, 23-01422 (La. 4/3/24), 382 So. 3d 105. Specific intent to kill may also be inferred from the extent and severity of the victim's injuries. *State v. Gilbert, supra*; *State v. Bull*, 53,470 (La. App. 2 Cir. 5/20/20), 296 So. 3d 1175, *writ denied*, 20-00797 (La. 12/22/20), 307 So. 3d 1040.

La. R.S. 14:31(A)(1) defines manslaughter as:

A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed[.]

A defendant who claims provocation as a means of reducing murder to manslaughter bears the burden of proving these elements by a preponderance of the evidence. *State v. Gilbert*, *supra*. "Sudden passion" and "heat of blood" which distinguish manslaughter from homicide are not elements of the offense, but mitigatory factors exhibiting a degree of

9

culpability less than is present when the homicide is committed without them. *State v. Tompkins*, 403 So. 2d 644 (La. 1981). A defendant who shows by a preponderance of the evidence that these mitigatory factors are present is entitled to the verdict of manslaughter. *State v. Lombard*, 486 So. 2d 106 (La. 1986). Because Franklin alleges that he met his burden of proving he shot Robison in sudden passion, the reviewing court's function is to determine whether a rational trier of fact, viewing the evidence in the light most favorable to the State, could have found that the mitigatory factors were not established by a preponderance of the evidence. *Id.*

In viewing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found beyond a reasonable doubt that the State proved the essential element of second degree murder. Franklin claims that he shot Robison after learning that she was in a new relationship. However, the evidence at trial does not establish that this was new information to Franklin, and there was no proof of a new relationship. There was conflicting testimony regarding whether Robison and Franklin were in a relationship. Clark stated that Franklin and Robison were not dating at the time of the murder and had not been dating for about two months. Det. Blanchard stated that the text messages between the two implied they were in a relationship. Franklin stated in his interview that they were not in a serious relationship and things were off and on between them. Franklin was aware of Robison talking to other guys while talking to him throughout their relationship but was unable to name any of the other guys.

Franklin shot Robison at least 20 times, stole her credit cards and cell phone, tried to use her credit cards, and pawned her phone. We are not convinced that learning a prior or casual dating partner had a new dating

10

partner was sufficient to deprive an ordinary person of their self-control or cool reflection such that Franklin should have been convicted of manslaughter rather than second-degree murder. The jury was in the best position to weigh the evidence and witness testimony. Viewing the evidence in the light most favorable to the prosecution, we conclude that the jury could have reasonably found that the mitigatory factors were not established by a preponderance of the evidence. We affirm his second degree murder conviction.

## CONCLUSION

For the foregoing reasons, we affirm the conviction and sentence of Benjamin Devonte Franklin.

**AFFIRMED.**